### COMMONWEALTH *vs.* JAMES B. TRIPLETT.

Worcester. September 5, 1997. - October 23, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Obstruction of Justice. Common Law Crime.*

This court concluded that, in order to convict a defendant charged with common law obstruction of justice, the Commonwealth must prove beyond a reasonable doubt that the defendant knowingly interfered, or attempted to interfere, with the testimony of a witness in a judicial proceeding [28-30], and a defendant convicted of that offense without such proof was entitled to the entry of a judgment of not guilty [30].

INDICTMENT found and returned in the Superior Court Department on December 13, 1994.

The case was tried before *James F. McHugh, III*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael P. Angelini* (*David M. Ianelli* with him) for the defendant.

*William J. Meade*, Assistant Attorney General (*Jeremy Silverfine*, Assistant Attorney General, with him) for the Commonwealth.

LYNCH, J. The defendant appeals from his conviction of the common law crime of "obstruction of justice." We transferred the case here on our own motion and now reverse.

1. *Facts.* The defendant is an attorney and the chief of police of Oxford. Law enforcement officers working as part of a regional drug task force were investigating drug-related activities in the area.[1] An informant, Brenda Bonneau,[2] implicated the

---

[1]The task force was called the drug enforcement liaison and tactical alliance and operated as a multi-jurisdictional police unit. Founded in 1988 by the defendant and in operation until 1992, the task force sought to educate local citizens and eradicate the drug supply in the participating localities.

[2]The defendant also claims that the prosecution withheld exculpatory information regarding Bonneau's veracity. We conclude it is unnecessary to address this issue on appeal.

defendant in connection with these drug activities. Other information supplied by Bonneau led to an arrest of a Webster police officer, Jose Matias, who sold drugs to an undercover officer working with the Attorney General's office.

On December 13, 1994, Bonneau testified before a grand jury that the defendant had questioned her on a number of occasions regarding the information she had supplied about him to the State and local police. Based in part on Bonneau's testimony, the grand jury indicted the defendant on the charge of obstruction of justice in violation of the common law and other charges.[3] In response to the defendant's request, the Commonwealth filed a bill of particulars on February 27, 1995, setting forth the basis for the indictment. The bill charged in pertinent part that the defendant:

> "contacted Brenda Bonneau, a witness to criminal investigations, on several occasions. The defendant had told Bonneau to keep quiet about anything involving him. On or about August 19, 1994, the defendant sought information from Bonneau about criminal investigations relative to Arnie Villatico, Jose Matias, and/or himself. On or about August 20, 1994, the defendant again sought information about criminal investigations and specifically what Bonneau had told state police. The defendant told Bonneau not to speak to the state police or the Attorney General's office."

At trial, Bonneau testified that the defendant told her that he "didn't want [her] talking to the [Attorney General's] office."[4]

---

[3]Additional indictments charged the defendant with violations of G. L. c. 268A, § 6A (making a false report); G. L. c. 268A, § 3 (accepting money in exchange for an official act); and two indictments of G. L. c. 268A, § 17 (being a municipal employee and acting as an attorney in a matter in which the town had a substantial interest). On the defendant's motion, these charges were severed from the obstruction of justice charge on September 5, 1995. The defendant was found not guilty of one of the conflict of interest charges and the accepting money charge. The judge declared a mistrial as to the false report charge. As to the remaining conflict of interest charge, the judge allowed the defendant's motion for a required finding. These charges are not at issue on this appeal.

[4]The prosecution presented evidence that the defendant had approached and questioned Bonneau about the investigation on August 19, August 20, October 13, and October 14, 1994. At the close of the Commonwealth's case, the

2. *Sufficiency of the evidence.* The common law crime of obstruction of justice has been recognized in the Commonwealth for many years.[5] See *Commonwealth* v. *Reynolds,* 14 Gray 87, 90 (1859) (recognizing obstruction of justice as "an indictable offence"); *Commonwealth* v. *Perkins,* 225 Mass. 80, 82 (1916)

defendant requested a required finding of not guilty as to the alleged incidents on those dates. The judge ruled that the only support for a conviction of obstruction of justice was the conversation alleged to have taken place on August 19, 1994.

The judge instructed the jury as follows:

> "[T]he Commonwealth must prove beyond a reasonable doubt four separate but related elements:

> "First, that on August 19th, 199[4], an investigation of [the defendant] and Mr. Villatico, or an investigation of [the defendant], or an investigation of Mr. Villatico was being conducted by law enforcement authorities in the office of the Attorney General of the Commonwealth of Massachusetts.

> "Two, that [the defendant] knew of that investigation.

> "Three, that on or about that date, [the defendant] requested, counselled or otherwise endeavored to persuade Brenda Bonneau not to provide truthful information to those engaged in carrying out the investigation.

> "And four, that [the defendant] did so knowingly, willfully and corruptly."

----

[5] It appears that the Commonwealth initially charged the defendant in the District Court with violating G. L. c. 268, § 13B; however, the prosecutor entered a nolle prosequi to that charge over the defendant's objection. General Laws c. 268, § 13B, states in pertinent part:

> "Whoever, directly or indirectly, wilfully endeavors by means of a gift, offer or promise of anything of value or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with . . . *any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth* . . . shall be punished by imprisonment . . . .

> "[A] 'criminal investigator' shall mean *an individual or group of individuals lawfully authorized by a department or agency of the commonwealth or any political subdivision thereof to conduct, or engage in, an investigation of, or prosecution for, a violation of the laws of the commonwealth in the course of his official duties.*" (Emphasis added.)

(acknowledging existence of crime of conspiracy to obstruct justice). The indictments in those cases, however, charged each defendant with interfering with a witness at a criminal trial. We have found no Massachusetts precedent applying the common law crime of obstruction of justice to the act of interfering with a criminal investigation. In a more recent decision this court questioned whether an individual charged with removing fingerprints from a knife might be prosecuted for obstruction of justice rather than as an accessory after the fact. *Commonwealth v. Devlin,* 366 Mass. 132, 138 (1974).[6] In 1981, the Attorney General opined that the range of indictable offenses under the rubric of obstruction of justice is unclear. See Rep. A.G., Pub. Doc. No. 12, 118, 120 (1981). Other jurisdictions in the absence of statutes have only applied the charge of obstruction of justice to interfering with a witness's trial or grand jury testimony. See *Kilpatrick v. State,* 72 Ga. App. 669, 672 (1945) (finding obstruction of justice where defendant induced witnesses to leave jurisdiction and prevent testimony at trial); *State v. Pagano,* 341 Md. 129, 134 (1996) (stating interference with pending judicial proceeding necessary for obstruction of justice offense); *People v. Vallance,* 216 Mich. App. 415, 419 (1996) (concluding defendant's intimidation of witness at pending criminal trial constituted obstruction of justice). Those precedents and the lack of support for the Commonwealth's view lead us to question the propriety of applying the crime of common law obstruction of justice to an act of interference with a criminal investigation.

If we were to conclude that such an application was proper, we would confront the constitutional maxim that both statutory and common law crimes must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Commonwealth v. Twitchell,* 416 Mass. 114, 123 (1993), quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). Any doubt in this regard must be resolved in favor of the defendant. See *Commonwealth v. Cintolo,* 415 Mass. 358, 359 (1993) (defining proscribed crime narrowly in favor of defendant); *Commonwealth v. Marrone,* 387 Mass. 702, 706 (1982) (requiring criminal statutes to be construed strictly); *Aldoupolis v. Commonwealth,* 386 Mass. 260, 267, cert. denied,

---

[6]We do not reach the defendant's argument that, if the common law crime ever existed, it was superseded by the Legislature's enactment of G. L. c. 268, § 13B.

459 U.S. 864 (1982) (observing "ordinary rules of statutory construction require" doubts to be resolved strictly against the Commonwealth); *Commonwealth* v. *Klein*, 372 Mass. 823, 833 (1977) (interpreting common law crime and noting standards of fairness apply to defendant).

Accordingly, we conclude that, in this case, it was not enough for the Commonwealth to prove that the defendant interfered with a criminal investigation. In order to convict the defendant of common law obstruction of justice, the Commonwealth had the burden to show beyond a reasonable doubt that the defendant knowingly interfered with the testimony of a witness in a judicial proceeding. This the Commonwealth failed to do. There was no evidence that the defendant interfered, or attempted to interfere, with Bonneau's role as a witness in a judicial proceeding.[7]

The judgment is reversed and the verdict is set aside. Judgment is to be entered for the defendant.

*So ordered.*

---

[7] The Commonwealth has argued that the defendant could be guilty of an attempt to obstruct justice because of Bonneau's testimony before a grand jury in December. However, the Commonwealth offered no evidence that, on August 19, 1994, the defendant knew there was or would soon be a grand jury hearing. Bonneau did not testify before the grand jury until December 13, 1994. During the course of Bonneau's lengthy testimony at trial, she stated that, in August, 1994, the defendant said, "he didn't want me. talking to the [Attorney General's] office if I could find out what they were doing with him . . . [and] what did I tell the [Attorney General's office], how did I get involved with the [Attorney General's office] . . . ." She did not testify that, on August 19, the defendant had said anything about her appearance before the grand jury. This evidence was insufficient to warrant the finding that the defendant intended to interfere with Bonneau's testimony before the grand jury.