JAMES B. TRIPLETT *vs.* TOWN OF OXFORD.

Worcester. April 8, 2003. - July 11, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Attorney's fees. *Massachusetts Tort Claims Act. Public Employment,* Police, Misconduct, Unethical conduct, Indemnification of employee. *Municipal Corporations,* Officers and agents, Police. *Police.*

In a civil action brought by a town's former chief of police for reimbursement of legal fees incurred in defending against criminal indictments and ethics charges, the Massachusetts Torts Claims Act, G. L. c. 258, § 13, did not authorize the town to reimburse the plaintiff. [723-728]

CIVIL ACTION commenced in the Superior Court Department on January 3, 1997.

The case was heard by *John S. McCann*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph L. Tehan, Jr. (Daniel C. Hill* with him) for the defendant.

*Michael P. Angelini (David M. Ianelli* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Austin M. Joyce & Andrew J. Gambaccini* for Massachusetts Police Association, Inc.

*Thomas F. Reilly,* Attorney General, *Cathryn A. Neaves,* Assistant Attorney General, *& David A. Wilson* for the Attorney General & another.

*Jeanne M. Kempthorne & Richard L. Neumeier* for Common Cause Massachusetts.

MARSHALL, C.J. In 1994 and 1995, James B. Triplett, then the chief of police of the town of Oxford (town), was the subject of State criminal indictments and charges by the State Ethics Com-

mission (commission). He incurred substantial legal fees in mounting a wholly successful defense against the criminal indictments and a largely successful defense against the ethics charges. When the town refused to reimburse him for his legal fees, Triplett filed a complaint for declaratory judgment in the Superior Court seeking indemnification under the Massachusetts Tort Claims Act (tort claims act), G. L. c. 258, § 13. The town moved for summary judgment, claiming that G. L. c. 258, § 13, does not encompass indemnification of municipal employees accused of criminal or ethics misconduct, even if the employee is later vindicated. Alternatively, the town posited that Triplett was not acting within the scope of his employment in connection with his alleged misconduct. Triplett responded with a cross motion for summary judgment, taking the contrary view on both arguments. A judge in the Superior Court concluded that G. L. c. 258, § 13, is applicable to municipal employees who defend against criminal indictments and ethics charges, but further concluded that there were questions of material fact whether Triplett had been acting within the scope of his employment. He denied the town's motion and allowed Triplett's motion, in part. A single justice of the Appeals Court granted the town leave to pursue an interlocutory appeal, and we transferred the case here on our own motion.

We conclude that G. L. c. 258, § 13, does not authorize a town to reimburse a municipal officer for legal fees and costs incurred in defending against criminal indictments or ethics charges, regardless of whether he is acquitted or his defense is otherwise successful. We therefore need not consider whether Triplett was acting within the scope of his employment when he engaged in the alleged conduct that gave rise to the indictments and ethics charges.[1]

1. *Background.* Triplett's tenure as chief of police lasted from 1985 to 1997. In 1987, he received a law degree, and the following year he was admitted to the Massachusetts bar. Thereafter, while continuing to serve as chief of police, Triplett maintained a private law practice. The criminal indictments and

---

[1] We acknowledge the amicus briefs filed by the Attorney General and the State Ethics Commission; Common Cause Massachusetts; and the Massachusetts Police Association, Inc.

ethics charges were returned in the wake of allegations that, as a lawyer, Triplett represented clients who were subject to town regulations that he, as chief of police, was responsible for enforcing; that he interfered with a criminal investigation concerning his own alleged illegal drug activity; and that, as chief of police, he showed favoritism to certain town residents. We summarize the charges and their disposition.

In December of 1994, a Worcester County grand jury indicted Triplett for twice violating the conflict of interest law (G. L. c. 268A, § 17), filing a false report (G. L. c. 268, § 6A), improperly accepting money for dismissing an application for a criminal complaint (G. L. c. 268A, § 3), and obstructing justice (G. L. c. 268, § 13A). In 1995, a jury convicted Triplett of obstructing justice. The jury acquitted Triplett on the charge of improperly accepting money and on one conflict of interest charge. See *Commonwealth* v. *Triplett*, 426 Mass. 26, 27 n.3 (1997). The trial judge allowed Triplett's motion for a required finding of not guilty on the second conflict of interest charge, and declared a mistrial on the false report charge. *Id.* In 1997, Triplett's sole conviction was reversed on appeal for insufficient evidence. See *id.* at 30.

Meanwhile, in January of 1995, one month after Triplett had been indicted, the commission issued an order to show cause alleging that Triplett had four times violated G. L. c. 268A, § 23 (*b*) (2) (using his official position to secure for certain persons privileges not available to similarly situated individuals), and six times violated G. L. c. 268A, § 23 (*b*) (3) (acting in a manner that would cause a reasonable person to conclude that certain individuals could unduly enjoy Triplett's official favor). The ethics charges arose from alleged conduct different from that which had led to the criminal indictments. Pursuant to a 1996 disposition agreement, Triplett admitted to three of the ethics charges under G. L. c. 268A, § 23 (*b*) (3), and paid a $2,000 civil penalty. Of the remaining ethics charges, the commission dismissed five and determined that Triplett had not committed the other two.

Triplett sought reimbursement from the town under G. L. c. 258, § 13, and submitted invoices for the legal fees he had incurred in defending against the charges; Triplett did not,

however, seek reimbursement for the legal fees he incurred in connection with the ethics charges to which he had admitted. The town refused to reimburse him, whereupon Triplett filed a complaint for declaratory judgment in the Superior Court.

2. *Discussion.* General Laws c. 258, § 13, provides in pertinent part:

> "Any . . . town which accepts this section in the manner hereinafter provided in this section[2] shall indemnify and save harmless municipal officers, elected or appointed from personal financial loss and expense including reasonable legal fees and costs, if any, in an amount not to exceed one million dollars, arising out of any claim, demand, suit or judgment by reason of any act or omission, except an intentional violation of civil rights of any person, if the official at the time of such act or omission was acting within the scope of his official duties or employment."

By its terms, § 13 provides for the indemnification of municipal officers who incur financial losses arising out of "any claim, demand, suit or judgment." Triplett argues that the criminal indictments and ethics (conflict of interest) charges fall squarely within the category of *"any* claim, demand, suit or judgment" (emphasis added). We disagree. Statutory language is the principal source of insight into legislative purpose, *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), cert. denied, 520 U.S. 1131 (1997), and the words "indictment," "criminal complaint," "charges," "order to show cause," or "ethics violation" do not appear in § 13 or in any other section of G. L. c. 258. See *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914) (we do not "read into [a] statute a provision which the Legislature did not see fit to put there"). We therefore interpret the statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513 (1975), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975).

---

[2]The parties agree that the town accepted this section in the manner specified in the statute.

With those principles in mind, we consider first the meaning of the disputed words ("claim," "demand," "suit," and "judgment") with reference to their use in other sections of the tort claims act. See *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 69 (2000) ("Where words in a statute are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute").

The word "claim," as used throughout G. L. c. 258, refers to civil actions for tort damages. G. L. c. 258, §§ 2-5. Moreover, a criminal "indictment" or ethics "charge" is not a "claim" in any ordinary sense of the word. The word "demand" as used in G. L. c. 258, a term similarly devoid of any ordinary applicability to criminal indictments or ethics charges, refers to a demand for civil damages. See *Irwin* v. *Ware*, 392 Mass. 745, 772 (1984) ("We interpret the word 'claim,' as used in [the tort claims act], as referring to a demand for all damages arising from a tort . . ."); *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 623 (1984) (former city employee made "written demand for relief" before commencing her civil action for wrongful termination under tort claims act). Finally, the tort claims act employs the word "suit" to denote a "claim for damages" resulting from an alleged tort or civil rights violation, and uses the word "judgment" to refer to a final judgment in a tort case, and not to a criminal or ethics proceeding. See G. L. c. 258, §§ 2, 9A. See also *Dugan* v. *Selectmen of Dartmouth*, 413 Mass. 641, 645 (1992) (G. L. c. 258, § 13, "states that an officer of a municipality [that] has accepted that section must be protected against personal liability for damages and attorneys' fees that arise out of a civil action against the municipal officer").

The legislative history of G. L. c. 258, § 13, confirms that the section does not extend to indemnification for "financial loss and expense" arising from criminal indictments or ethics charges. Before 1978, when the Legislature enacted the tort claims act, the Commonwealth and its municipalities enjoyed immunity from suit, subject to certain statutory and common-law exceptions. See *Troy & Greenfield R.R.* v. *Commonwealth*, 127 Mass. 43, 46 (1879); *Briggs* v. *Light-Boat Upper Cedar Point*, 11 Allen 157, 174 (1865); *Mower* v. *Leicester*, 9 Mass.

247, 250 (1812).[3] Certain individual public employees could, however, be held personally liable for tort damages arising from the performance of their ministerial duties. See *Desmarais* v. *Wachusett Regional Sch. Dist.*, 360 Mass. 591, 593 (1971); *Trum* v. *Paxton*, 329 Mass. 434, 438 (1952); *Fulgoni* v. *Johnston*, 302 Mass. 421, 423 (1939). To protect those employees from the financial burden of both damages or expenses arising from the defense of tort actions, the Legislature enacted several indemnification statutes, two of which — precursors to § 13 — covered municipal officers. See G. L. c. 41, §§ 100E, 100I. See generally Glannon, Governmental Tort Liability Under the Massachusetts Tort Claims Act of 1978, 66 Mass. L. Rev. 7, 14 (1981). Nothing in these early indemnification provisions suggests that the Legislature intended to reimburse employees for legal fees related to charges of criminal misconduct or ethics violations.

Specifically, the first indemnification statute covering municipal officers, G. L. c. 41, § 100E, inserted by St. 1969, c. 413, represented one of a series of legislative efforts to protect public employees sued for civil damages. See, e.g., G. L. c. 41, § 100 (indemnification for damages or expenses incurred by police officers and fire fighters); G. L. c. 41, §§ 100A, 100D (indemnification for damages or expenses incurred by municipal employees causing injury or death through use of municipal vehicles); G. L. c. 41, § 100C (indemnification for damages or expenses incurred by school teachers). Although G. L. c. 41, § 100E, permitted a city or town to reimburse municipal officers, it did not *require* a municipality to do so, leaving public employees vulnerable to a case-by-case determination of any

---

[3]The Commonwealth could be sued for breach of contract, injuries caused by highway defects, and private nuisances that caused injury to property. See St. 1879, c. 255, § 1; St. 1893, c. 476, § 13; *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 618-619 (1973).

Municipalities could be sued for injuries arising from street defects and riots, and for claims involving exclusion from public school. See Province Laws 1693-1694, c. 6, § 6; St. 1839, c. 54, §§ 2, 3; St. 1845, c. 214. A municipality could also be held liable for an employee's acts undertaken for the municipality's own profit or corporate interests, but not for an employee's acts undertaken for the public good. See *Orlando* v. *Brockton*, 295 Mass. 205, 207-208 (1936); *Bolster* v. *Lawrence*, 225 Mass. 387, 390 (1917); *Bigelow* v. *Randolph*, 14 Gray 541, 543 (1860).

claim for indemnification. To address that issue, legislation was proposed to make such indemnification of municipal officers mandatory rather than discretionary. See 1975 House Doc. No. 689.[4] A Senate version of the House bill — an enabling statute whereby a city or town could choose whether to accept it, and if so, the city or town would then be required to indemnify municipal officers — was enacted later that year. 1975 Senate Doc. No. 2109, as amended, 1975 House J. 2880, enacted as St. 1975, c. 753, § 3. The words at issue in this case, "any claim, demand, suit, or judgment," appeared for the first time in 1975 House Doc. No. 689, and were retained in the Senate version, later codified as G. L. c. 41, § 100I. It is noteworthy that the words first appeared as part of legislative efforts designed to safeguard public employees from personal liability for damages or expenses arising from tort actions. See Glannon, Governmental Tort Liability Under the Massachusetts Tort Claims Act of 1978, 66 Mass. L. Rev. 7, 14 (1981).

The enactment of the tort claims act three years later lifted the shield of immunity for negligence claims against State and local governments, G. L. c. 258, § 2; immunized public employees against personal negligence suits, *id.*; and provided public employers with the *discretion* to indemnify public employees for financial loss and expenses arising from certain civil actions (intentional torts and civil rights violations), G. L. c. 258, § 9. The Legislature simultaneously repealed G. L. c. 41, §§ 100E and 100I, and struck other indemnification statutes. See St. 1978, c. 512, §§ 9, 10, 17. In response to the "certainly inadvertent" failure of the Legislature to provide for mandatory indemnification, see Glannon, Indemnification Under G. L. c. 258, § 9: Who is a "Municipal Officer"?, 2 Mass. Gov't Liab. Rep. 19, 19 (1988) (discussing enactment of G. L. c. 258, § 13), the Massachusetts League of Cities and Towns sought reinstatement of G. L. c. 41, § 100I, because its repeal in 1978 threw into doubt "the continued statutory support of the automatic [mandatory] indemnification of municipal officers of those cities and towns which had accepted [§] 100I." The

---

[4]The legislative history includes a memorandum indicating that the impetus for the bill was reimbursement for the bill's sponsor, who was at the time a defendant in a civil lawsuit.

Legislature responded by enacting G. L. c. 258, § 13, inserted by St. 1979, c. 396,[5] an enabling statute that closely resembles § 100I. The Legislature's obvious goal in enacting § 13 was to permit cities and towns, if they so chose, to provide mandatory indemnification to employees who were sued for damages. See Glannon, Indemnification Under G. L. c. 258, § 9: Who is a "Municipal Officer"?, *supra.* There was no reference to indemnification of those employees accused of criminal or ethics misconduct.

Whether public officials should be indemnified for legal fees incurred in defending criminal charges arising from conduct within the scope of their employment has, on other occasions, been considered by the Legislature. In 1967, the Legislative Research Council, responding to repeated filings of individual bills calling for the reimbursement of legal fees incurred by public officials indicted and later acquitted, issued a Report Relative to Reimbursement of Legal Costs to Indicted Public Officials. See 1967 House Doc. No. 4636. The report presented, without recommendation, arguments for and against a broad reimbursement statute, one that would encompass criminal indictments. The Legislature took no action in response to the report, nor has it done so in the succeeding thirty-five years. Moreover, when the Legislature has authorized a municipality to indemnify a public employee for legal fees and costs incurred in defending against criminal charges, it has done so in clear language. See, e.g., St. 1983, c. 337, §§ 1-2 (city of Waltham could, in its discretion, indemnify public employee for "fines, penalties, [and] legal and professional fees and costs . . . arising out of any . . . criminal complaint or application therefor, [or] indictment"). There is no comparable language in G. L. c. 258, § 13.

Triplett has excluded from his fee request the fees incurred with respect to the admitted ethics violations. In doing so, he impliedly concedes that it would be repugnant to require municipalities to pay for the legal fees of those found guilty of

---

[5]General Laws c. 258, § 13, made retroactive to the effective date of the tort claims act (July 20, 1978), also declared that any city or town that had accepted G. L. c. 41, § 100I, "shall indemnify and save harmless municipal officers."

criminal charges or ethics violations in connection with their official duties. Yet G. L. c. 258, § 13, contains no restriction limiting reimbursement based on the outcome of the underlying "claim, demand, suit or judgment." To the contrary, the indemnification covers the officer even if the officer is found liable for that "claim, demand, suit or judgment." Whatever the equitable merits of reimbursing a wrongly accused municipal officer, nothing in § 13 would limit reimbursement to those cases in which the fees were incurred as part of a successful defense. This confirms our view that § 13 was not intended to address that problem.

We recognize that the financial burden of a successful defense against criminal indictments or ethics charges can be substantial. This is so whether or not the defendant is a municipal or other public employee. The Legislature has considered whether to indemnify public officials for their defenses of criminal charges. It has not acted. We see no basis to interpret the existing legislation beyond its "main object to be accomplished." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975).

We reverse the denial of the town's motion for summary judgment, vacate the order of partial summary judgment for Triplett, and order that judgment be entered for the town.

*So ordered.*