CHARLES F. McCOY, JR. vs. TOWN OF KINGSTON.

No. 06-P-396.

Plymouth. November 14, 2006. - May 2, 2007.

Present: DOERFER, KATZMANN, & VUONO, JJ.

*Public Employment,* Indemnification of employee. *Massachusetts Tort Claims Act. Municipal Corporations,* Officers and employees, By-laws and ordinances. *Words,* "Claim."

A town's elected tax collector (plaintiff) was not entitled to indemnification from the town for legal fees incurred in a dispute with a taxpayer, where although the plaintiff's indemnification action arose out of the threatened, imminent filing of a specific suit in tort, which constituted a "claim" against the plaintiff as that term is used in the indemnification provision of the Massachusetts Tort Claims Act, G. L. c. 258, § 13 [823-826], the plaintiff failed to seek the town's prior approval before incurring private counsel fees, as required by town policy, which was not inconsistent with § 13 [826-828].

CIVIL ACTION commenced in the Superior Court Department on June 24, 2002.

The case was heard by *Charles J. Hely,* J., on motions for summary judgment.

*John T. Landry, III,* for the plaintiff.

*Gregg J. Corbo* for the defendant.

KATZMANN, J. Charles F. McCoy, Jr., an elected tax collector for the town of Kingston (town), filed suit against the town in the Superior Court seeking declaratory relief and indemnification for legal fees incurred in a dispute with a Kingston taxpayer. On cross motions for summary judgment, the judge determined that McCoy was not entitled to indemnification due to (1) the inapplicability of G. L. c. 258, § 13, to the dispute; and (2) his failure to seek the selectmen's prior approval before incurring private counsel fees, as required by a 1994 town policy. On appeal, McCoy argues that both of the judge's determinations

were erroneous. Because McCoy failed to seek prior approval under the town policy, we affirm the judgment.

*Background.* We set out the material facts of the case, which are not in dispute and present only questions of law on summary judgment. See *Annese Elec. Servs., Inc.* v. *Newton,* 431 Mass. 763, 764 & n.2 (2000). On May 10, 1980, the town accepted the provisions of G. L. c. 258, § 13. That section of the Massachusetts Tort Claims Act provides:

> "Any city or town [accepting this section] shall indemnify and save harmless municipal officers, elected or appointed from personal financial loss and expense including reasonable legal fees and costs, if any, in an amount not to exceed one million dollars, arising out of any claim, demand, suit or judgment by reason of any act or omission, except an intentional violation of civil rights of any person, if the official at the time of such act or omission was acting within the scope of his official duties or employment."

G. L. c. 258, § 13, as amended by St. 1982, c. 176, § 1. After a vote in November, 1994, the town selectmen notified all town officials of the town's policy not to pay special counsel unless the selectmen approved the appointment of such counsel prior to any costs being incurred (the 1994 town policy).

At all times material to this case, McCoy was the duly elected tax collector for the town. In April, 1998, in connection with his attempts to collect excise taxes, a dispute arose between McCoy and Liddell Brothers, Inc. (Liddell). Liddell wrote a letter complaint dated May 1, 1998, to the town selectmen about the dispute with McCoy.[1] The letter stated in part, "Please review

---

[1]According to Liddell's letter complaint, McCoy sent excise tax bills to Liddell on their vehicles, including various trailers. With the exception of eighteen bills of $5 apiece (totaling $90) for eighteen trailers which Liddell no longer owned (and for which it had submitted applications for abatement as instructed by the town assessor), Liddell attempted to pay its entire remaining bill of $5,680 on April 10, 1998. McCoy refused to accept payment without the $90, or to follow Liddell's instructions to apply the check to the remaining vehicles and trailers. On April 30, 1998, McCoy's office returned Liddell's check with demands (dated April 13, due April 27) which, with demand fees and interest, totaled an additional $1,326.05. When Liddell's comptroller complained on April 30, McCoy told her that Liddell had until May 1 to make payment, or he would issue warrants on all of Liddell's 250 vehicles, totaling in excess of $6,000.

the circumstances of this matter and advise me as to my alternatives. Should this matter not be solved, I will be forced to seek relief through our attorneys." On May 20, 1998, Liddell's counsel wrote to McCoy directly, as tax collector, about the dispute, stating in part:

> "Please be advised that unless this matter is resolved within one (1) week from the date hereof, my client has instructed me to present and bring all available claims against all responsible parties, both individually and in their official capacity, seeking damages, including any damage to reputation."

Without prior approval of the town selectmen, McCoy retained a law firm as private counsel, initially paying a retainer of $2,500.

On May 28, 1998, Liddell's counsel wrote to McCoy's counsel, stating in pertinent part:

> "[P]lease be advised that if this matter is not resolved forthwith, my client has instructed me to commence an action in the Massachusetts State Court seeking both Declaratory Relief and a Writ of Mandamus, as well as an action in the Federal District Court for your client's blatant violations of my client's Constitutional rights secured by the Fifth, Ninth and Fourteenth Amendments, pursuant to 42 U.S.C. [§] 1983. In addition, my client will undoubtedly seek damages for your client's intentional conduct in violation of Massachusetts General Laws Chapter 12 § 11, and for intentional infliction of emotional distress, tortious interference with contractual relations and tortious interference with advantageous relations. In all, these actions will seek all available compensatory and punitive damages from your client, plus reimbursement for any and all attorney's fees and costs, which have resulted directly or consequentially from Mr. McCoy's conduct. (As a courtesy, I refer you to the matter of *Larry Slot, et als., v. Town of Kingston, et als.*, U.S. District Court, C.A.No. 90-11826, a decision with which I am sure Mr. McCoy is familiar.)

> "As these actions will be brought against Mr. McCoy both in his official capacity as tax collector, as well as individu-

ally, I urge you and your client to carefully consider the potential outcomes and your client's likely exposure as a result of his conduct, and to contact me immediately to discuss this matter prior to the initiation of litigation.

". . . If I have not heard from you within seven (7) days from the date of this letter I will take any and all necessary steps to protect my client."

The chairman of the town board of selectmen was copied in both the May 20 and May 28 letters.

Subsequently, prior to the filing of any complaint, Liddell and McCoy, individually and as tax collector, entered into a mutual release and settlement agreement. Liddell agreed to pay the full amount of the excise taxes due with interest, a total of $6,099.30. In short, Liddell paid the town just $419.30 more than the original payment which it had tendered on April 10, 1998.

McCoy's counsel billed him $12,170.36.[2] McCoy submitted a request for indemnification to the town, which, in May, 2000, voted to deny the request. McCoy's counsel brought suit against McCoy to recover legal fees and obtained a judgment against him in the amount of $11,669.92. By complaint filed June 24, 2002, McCoy brought this action against the town seeking declaratory relief and indemnification. On cross motions for summary judgment, the Superior Court judge, relying on general language in *Triplett* v. *Oxford*, 439 Mass. 720, 724 (2003) (*Triplett*), concluded that none of the various communications from Liddell or Liddell's counsel reflected a "claim" or a "demand" under G. L. c. 258, § 13. In addition, the judge concluded that the town properly could impose a supplemental requirement of the selectmen's prior approval before incurring any liability under § 13, and that McCoy's failure to obtain such approval barred his claim.

*Discussion.* On appeal, McCoy contests both rationales for the decision. We address each argument in turn.

---

[2] A portion of these fees were related to internal employment disputes concerning McCoy's job performance and compensation. McCoy correctly does not claim any right under § 13 to indemnification on these matters, and they are not relevant to this appeal.

1. *Application of G. L. c. 258, § 13.* As noted, on May 10, 1980, the town accepted the indemnification provision of the Massachusetts Tort Claims Act, G. L. c. 258, § 13, and is required to indemnify McCoy, as a municipal officer, if he meets the requisite criteria. Thus, at issue is whether McCoy's action for indemnification arises "out of any claim, demand, suit or judgment" against him as set forth by § 13. We conclude that his action does arise out of a "claim."[3]

The issue is whether McCoy's request for indemnification of attorney's fees arises out of a claim of Liddell against McCoy in his capacity as Kingston tax collector. The town asserts that the judge was correct in concluding that because Liddell never actually filed a civil action against McCoy, McCoy is not entitled to reimbursement for attorney's fees. In support of this proposition, Kingston relies on *Triplett*, 439 Mass. at 724. In *Triplett*, the Supreme Judicial Court explained that the word "claim" as it is used throughout G. L. c. 258 refers to a civil action for tort damages. *Ibid.* Here, because the Liddell dispute did not qualify as a civil action for tort damages, the judge determined that it was not a claim under § 13.

We do not agree with the judge's application of *Triplett*. There, the court was not faced with the issue presented here by the Liddell dispute, which is rooted in tort. Rather, in *Triplett*, presented with the question whether a criminal indictment or ethics charges constituted a "claim" cognizable for indemnification under § 13, the Supreme Judicial Court examined whether they constituted a "claim" "in any ordinary sense of the word," *ibid.*, and determined that they did not. Cf. *Irwin* v. *Ware*, 392 Mass. 745, 772 (1984) (interpreting the term "claim" as "referring to a demand for all damages arising from a tort"). The *Triplett* court was not presented with the question whether threatened, imminent filing of a specific suit in tort can

---

[3]As Liddell never filed a civil action against McCoy, McCoy's present action does not arise out of a "suit" or "judgment" as defined in G. L. c. 258, § 13. See *Triplett*, 439 Mass. at 724 (defining "suit" as denoting a claim for damages resulting from a tort violation and "judgment" as referring to a final judgment in a tort case). As we base our decision on the statutory term "claim," we also need not decide whether the term "demand" applies under the circumstances of this case.

constitute a claim for purposes of indemnification under § 13 where a civil action has not yet been instituted.

To answer the question, "we closely examine the statute in light of the standard principles that statutes are to be interpreted in a commonsense way which is consistent with the statutory scheme." *Kramer* v. *Zoning Bd. of Appeals of Somerville*, 65 Mass. App. Ct. 186, 191-192 (2005). Thus,

> "we look first to the language of the statute. '[S]tatutory language is the principal source of the insight into legislative purpose.' *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 415 (1984). . . . When the words of a statute are clear, they are to be given their ordinary and natural meanings. . . . If the meanings are unclear, the statute must be interpreted 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' . . . In addition, 'a statute should be read as a whole to produce an internal consistency.' "

*Adoption of Marlene*, 443 Mass. 494, 497-498 (2005). Moreover, "[w]here words in a statute are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute." *Triplett*, 439 Mass. at 724, quoting from *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 69 (2000). Furthermore, "a statute should not be read in such a way as to render its terms meaningless or superfluous." *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 268 (1991).

Here, § 13 contemplates a continuum of separate and different events — "claim, demand, suit or judgment" — which can trigger indemnification for a municipal officer. Interpreting "claim" to explicitly require the filing of a civil action is not only not provided by the face of the statute, but is inconsistent with the use of the term "claim" in other sections of the Massachusetts Tort Claims Act, G. L. c. 258, §§ 4 and 5. Specifically, § 4 requires that "[a] civil action shall not be instituted against a public employer on a claim for damages under this

chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer . . . ." G. L. c. 258, § 4, inserted by St. 1978, c. 512, § 15. This language therefore explicitly recognizes that a claim exists before the filing of a civil action. See *Lopez* v. *Lynn Hous. Authy.*, 440 Mass. 1029, 1030 (2003) ("We have stated that there must be strict compliance with the requirement of G. L. c. 258, § 4, that the plaintiff present his or her claim to the executive officer of a public employer prior to filing suit. See, e.g., *Weaver* v. *Commonwealth*, 387 Mass. 43, 47 [1982]. Without such compliance, 'the executive officer with the authority to settle a claim could not be assured of an adequate opportunity to investigate the circumstances surrounding that claim in order to determine whether an offer of settlement should be made.' *Id.* at 48"); *Garcia* v. *Essex County Sheriff's Dept.*, 65 Mass. App. Ct. 104, 107 (2005) (presentment of a claim is required under § 4 prior to the filing of a civil tort suit).[4]

Likewise, the judge's interpretation of the term "claim" in § 13 is inconsistent with its usage in G. L. c. 258, § 5. Section 5 provides in part that the executive officer of a public employer "shall not arbitrate, compromise or settle any . . . claim [for damages] before it has been presented to him in writing or after six months have passed from the date upon which such claim was presented to him." G. L. c. 258, § 5, inserted by St. 1978, c. 512, § 15. The language of this section provides that the claim only need be presented, not that it be in the form of a civil action against the municipality. Indeed, the settlement of claims, prior to litigation, is a major objective of the act. *Irwin*, 392 Mass. at 770.

The town's position would require a party seeking indemnification for a "claim" to prove that a civil action was filed against him. Cf. *Triplett*, 439 Mass. at 723 ("we do not 'read into [a] statute a provision which the Legislature did not see fit to put there' "), quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). Furthermore, requiring a claim to be in the form of a civil action is not only contrary to the purpose of §§ 4 and 5, but also makes the term "suit" in § 13 superfluous. See *Bynes*, 411 Mass. at 268.

---

[4]It is not material to our decision whether Liddell's letter complaint to the town selectmen or its May 20 or May 28 letters qualified as presentment letters under § 4.

Here, Liddell made several written requests upon both Mc-Coy and the town demanding resolution of the excise tax issue. The letters expressly threatened legal action and asserted that tortious interference with contractual relations and tortious interference with advantageous relationships were among the "claims" in an impending cause of action. Moreover, the subject line of each of the latter two letters was "Liddell Brothers, Inc. vs. Charles McCoy, Tax Collector, et als." Although a cause of action had yet to be filed, the underlying "claims" were identified and in existence. Recognizing the existence of these "claims," McCoy's attorney acted to settle the matter before the threatened litigation became necessary. Viewed particularly in light of their specificity — setting forth asserted grievances, litigation consequences, and the imminence of action — the Liddell letters, which were provided to the town's board of selectmen, constitute claims in the "ordinary sense of the word." *Triplett*, 439 Mass. at 724. Such a determination here is consistent with the policy underlying § 13, that "public indemnification of public officials serves in part to encourage public service." *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 629 (1984) (*Filippone*).

2. *Application of 1994 policy.* The town's general by-laws provide that "[t]he Selectmen shall have the power to institute or defend suits and to employ Counsel at any time if in their judgment the interests of the town so require." In accordance with its authority with respect to the employment of counsel, the town's board of selectmen established in a memorandum the 1994 policy providing that "no special counsel will be paid unless the Board of Selectmen approves the appointment of that counsel *prior to any costs being incurred*" (emphasis original). That policy further states that "[u]se of Town Counsel will continue to be determined on a case-by-case basis by the Town Administrator." McCoy concedes that he engaged private counsel to represent him without seeking or obtaining prior approval from the town as required by the 1994 policy. McCoy argues that despite this failure and violation of the policy, he is still entitled to indemnification because the policy is inconsistent with the provisions of G. L. c. 258, § 13. As did the Superior Court judge, we disagree.

Municipal by-laws are entitled to a presumption of validity, and a town exceeds its authority when it passes an ordinance or by-law inconsistent with the Constitution or the laws of the Commonwealth. *Take Five Vending, Ltd.* v. *Provincetown*, 415 Mass. 741, 744 (1993). The plaintiff bears the burden of invalidating the by-law, and "enforcement will not be refused unless it is shown beyond reasonable doubt that [it] conflict[s] with the applicable enabling act or the Constitution." *Grace* v. *Brookline*, 379 Mass. 43, 50 (1979), quoting from *Crall* v. *Leominster*, 362 Mass. 95, 102 (1972). "In determining whether a local ordinance or by-law is inconsistent with a State statute, we have given municipalities 'considerable latitude,' requiring a 'sharp conflict' between the ordinance or by-law and the statute before invalidating the local law." *Take Five Vending, Ltd.*, 415 Mass. at 744, quoting from *Bloom* v. *Worcester*, 363 Mass. 136, 154 (1973). This conflict arises when the Legislature intended to preclude local action or the local ordinance or by-law inhibits the achievement of the purpose of the statute. *Take Five Vending, Ltd.*, 415 Mass. at 744.

In the present case, there is not a "sharp conflict" between the procedural requirements of the Kingston policy and the substantive indemnification provisions of § 13. The purpose of § 13, where accepted by a town, is to provide municipal officers with mandatory indemnification for personal financial loss and expenses, including reasonable legal fees and costs, subject to specified conditions. G. L. c. 258, § 13. The by-law and the 1994 policy facilitate the orderly processing of requests for indemnification so that the town can better manage its financial affairs. Neither the by-law nor the policy change the basis upon which a municipal employee is entitled to indemnification, and if an indemnification request is rejected, the employee has legal recourse to have the propriety of the rejection determined. See *Dugan* v. *Selectmen of Dartmouth*, 413 Mass. 641, 642 (1992); *Triplett*, 439 Mass. at 721.

McCoy argues that § 13 entitles a public employee to retain counsel of his own choosing, and then to seek indemnification for these expenses. This interpretation would erode, if not effectively eliminate, any screening role or gatekeeping function that enables the town to retain a degree of control over in-

demnification expenses, or to minimize its own liability. As the judge observed, such an interpretation would give "a town employee . . . a blank check to retain any attorney, regardless of qualifications and fee rates, even in a matter such as this where the right to indemnity is questionable." As such, the interpretation urged by McCoy would conflict impermissibly with the well-established power of municipal government to designate the manner in which funds for legal services will be expended, including the retention of counsel. See *Board of Pub. Works of Wellesley* v. *Selectmen of Wellesley*, 377 Mass. 621, 625 (1979) (acknowledging town's general power to "control expense and improve management"). Consistent with that power, the town by-law and policy create a supplemental screening mechanism by which the town can determine for itself whether a town official actually requires counsel separate and apart from the town counsel. See *Filippone*, 392 Mass. at 628-629 (municipalities retain the authority to enact procedural requirements for processing requests for indemnification). Indeed, this procedure for prior approval promotes the indemnification condition in § 13 that legal fees and costs be "reasonable." Moreover, it assists the town to coordinate litigation liability under G. L. c. 258, § 2, which provides that public employers are liable for negligent or wrongful acts or omissions by public employees. In sum, there is not a sharp conflict between the town's 1994 policy and § 13. Rather, the policy is a reasonable supplement to § 13, and does not prevent its operation.

*Judgment affirmed.*