# United States Court of Appeals
## For the First Circuit

No. 14-2306

WILLIAM H. DAVIS,

Plaintiff, Appellant,

v.

MARTHA COAKLEY and DEVAL PATRICK,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Thompson and Lipez, Circuit Judges,
and Barbadoro,* District Judge.

Christopher M. Perry, with whom Terance P. Perry, Brendan J. Perry & Associates, P.C., and Datsopoulos, MacDonald & Lind, P.C. were on brief, for appellant.
Hélène Kazanjian, Assistant Attorney General, with whom Andrew W. Koster, Assistant Attorney General, and Maura Healey, Attorney General of Massachusetts, were on brief, for appellees.

September 18, 2015

---

* Of the District of New Hampshire, sitting by designation.

**LIPEZ**, **Circuit Judge**.    Appellant William H. Davis ("William"), in his capacity as the personal representative of the estate of Jason H. Davis ("Jason"), brings this action against former Massachusetts Governor Deval Patrick and former Attorney General Martha Coakley, in their personal capacities, seeking monetary damages under 42 U.S.C. § 1983.  In 1998, Jason received a punitive damages award in a federal civil rights action that he brought against six individual state employees who were held responsible for restraining and beating him in a state mental hospital.

Appellant contends that Patrick and Coakley violated the Davis estate's equal protection and due process rights because they, on behalf of the Commonwealth of Massachusetts, refused to indemnify the punitive damages award, while at the same time agreeing to settle the civil rights claims of another individual, Joshua Messier, who died at another state mental facility years later while he was being subdued by corrections officers.  The district court granted Patrick and Coakley's motion to dismiss. Finding no merit in appellant's arguments, we affirm.

**I.**

Because this appeal follows the grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we recite the facts of appellant's claim as alleged in the complaint

and documents incorporated into the complaint.  See SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc).

## A. The Davis litigation

At all relevant times, Jason Davis suffered from a variety of acute psychiatric disorders, including schizo-affective and bipolar disorders.  In May 1993, when he was 28 years old, Jason was involuntarily committed to Westborough State Hospital ("Westborough"), a public mental health care facility.  About three months later, on August 12, Jason was severely beaten by a mental health care worker at Westborough while five others physically restrained him and a nurse looked on and encouraged the beating.[1]

In August 1996, Jason filed suit under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, alleging that the mental health care workers (and their supervisors) violated his civil rights.  The jury found for Davis against the six mental health care workers and the nurse,[2] and awarded Davis a total of $100,000 in compensatory damages.  Those defendants were jointly and severally liable for the compensatory

---

[1] We have previously described Jason's beating in detail when we upheld the jury's verdict and damages award in his case.  See Davis v. Rennie, 264 F.3d 86, 93-95 (1st Cir. 2001).  Appellant has incorporated much of our accounting of these facts in the complaint.

[2] The six healthcare workers were Phillip Bragg, Paul Rennie, Richard Gillis, Thomas Michael Hanlon, Leonard Fitzpatrick, and Nicholas Tassone.  The nurse was Joyce Weigers.

damages. The jury also awarded punitive damages against all but one of those same defendants (Nicholas Tassone), based on a finding that they "'harbored . . . ill will towards [Jason].'" Davis v. Rennie, 264 F.3d 86, 115 (1st Cir. 2001). After the district court reduced the punitive damages amount through remittitur, Davis was owed $1.025 million in punitive damages. On appeal, we affirmed the jury's verdict and the damages award. See id. at 117.

Because Tassone was not subject to the punitive damages award, the Massachusetts Department of Mental Health ("DMH") indemnified him and paid Davis the entire $100,000 compensatory damage award. However, DMH refused to indemnify the other defendants because the Commonwealth argued that Massachusetts law prohibits state employers from indemnifying their employees for punitive damages awards arising out of civil rights actions. See Mass. Gen. Laws ch. 258, § 9. Jason died on June 14, 2004. None of the defendants subject to the punitive damages award have paid their share.[3] Appellant alleges that the entire outstanding judgment (including attorneys' fees, costs, and interest) currently stands at $2.1 million.

---

[3] In June 2014, the Massachusetts legislature passed a joint appropriation to pay Davis $500,000 of the outstanding judgment owed to him. In July 2014, Patrick vetoed the joint appropriation, stating that "state law . . . prohibits indemnifying employees under these circumstances." According to appellant, the Massachusetts legislature overrode the veto, but the joint appropriation has not been paid.

## B. The Messier litigation

Joshua Messier was an acutely ill patient who was involuntarily committed at the Bridgewater State Hospital. On May 4, 2009, Messier was killed while being restrained by multiple corrections officers. Using the "hog-tieing" technique, the corrections officers placed Messier on a restraint table (back down), securing his legs in two leg restraints and then folding his body over his knees. This technique caused Messier to suffer heart failure and die.

On April 26, 2012, Kevin Messier, as personal representative of the estate of Joshua Messier, filed a civil lawsuit in Suffolk Superior Court against Bridgewater State Hospital, the Commonwealth of Massachusetts, its Department of Corrections, and nine Bridgewater corrections officers. The complaint included civil rights claims, intentional torts (assault, battery, and intentional infliction of emotional distress), negligence and gross negligence claims, wrongful death, conscious pain and suffering, and loss of consortium claims. The Messier case settled on July 31, 2014, resulting in the payment of $2 million from Massachusetts.

## C. The current lawsuit

Soon after Jason's former counsel became aware of the Messier settlement, he sent demand letters to Patrick, then-Governor of Massachusetts, and Coakley, then-Attorney General of

Massachusetts, requesting that the Commonwealth pay the punitive damages award in Jason's case because it had agreed to settle the Messier case. The requests were denied. On August 21, 2014, Jason's father William H. Davis, in his capacity as the personal representative of Jason's estate, filed a complaint in the district court, bringing claims under 42 U.S.C. § 1983 against Patrick and Coakley in their personal capacities. The complaint alleges that Patrick and Coakley violated the Davis estate's due process and equal protection rights by agreeing to settle the Messier case while, at the same time, refusing to pay for the outstanding punitive damages award owed to the Davis estate.

Patrick and Coakley moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On November 19, 2014, the district court held a hearing on the motion. At the hearing, the court orally granted the motion to dismiss. The district court accepted the government's argument that the Messier and Davis cases "are quite different because Mr. Messier's lawyers accepted the settlement offer whereas Mr. Davis did not, his lawyers did not accept the settlement offer and went to trial." The court added that "drawing all intendments in favor of the well-pleaded facts in this complaint, I simply do not rule that [those facts] create[] a cause of action . . . under the federal Constitution on any of the theories advanced." William timely appealed the district court's ruling.

## II.

We review de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 443 (1st Cir. 2000). We must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the non-moving party. Id. We will affirm the dismissal "only if, under the facts alleged, the plaintiff cannot recover on any viable theory." Id. (internal quotation marks omitted) (citation omitted).

Appellant argues that Patrick and Coakley violated the Davis estate's due process and equal protection rights because they "paid the Messier [e]state for conduct which was intent based, even though expressly prohibited from doing so . . . while depriving the similarly circumstanced Davis [e]state of this same benefit." Appellant's Br. at 19. We address the Davis estate's equal protection and due process arguments in turn.

### A. Equal Protection

"The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004) (citation omitted). To establish an equal protection claim, a plaintiff needs to allege facts showing that "(1) the person, compared with others similarly situated, was selectively

- 7 -

treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (quoting Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989)).

An individual is "similarly situated" to others for equal protection purposes when "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)). As we have explained, "[e]xact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." Id.

Appellant contends that the Davis and Messier estates were similarly situated because Massachusetts law -- specifically Massachusetts General Laws chapter 258, § 9 ("§ 9") -- prohibited the Commonwealth from indemnifying what Davis refers to as "intent based civil rights claims" (e.g., assault, battery, intentional infliction of emotional distress, and the like) that were asserted against state employees of Massachusetts mental health facilities

- 8 -

in both the Davis and Messier cases. Appellant's Br. at 38. He argues that the Davis estate was treated differently from the Messier estate because, while the statute did not permit indemnification, appellees, using their power "under the Executive Branch Custom and the Executive Fiat Custom,"[4] chose to indemnify Messier's claims (by authorizing the $2 million settlement payment) while rejecting the Davis estate's request that appellees indemnify its punitive damages award. See id. at 41.

Appellant's argument is premised on a fundamental misunderstanding of Massachusetts law. He contends that, under § 9, "only negligent conduct is subject to indemnification" and "intentional torts and civil rights violations committed by public employees . . . are not subject to indemnification." Appellant's Reply Br. at 6, 9. Appellant is incorrect. In fact, the statute explicitly authorizes public employers to indemnify public employees who have committed "an intentional tort" or have committed "any act or omission which constitutes a violation of the civil rights of any person under any federal or state law." Mass. Gen. Laws ch. 258, § 9.[5] See also Venuti v. Riordan, 702

---

[4] Appellant does not cite any authority for these concepts, nor does he explain what they mean. We have found no legal authority explaining them.

[5] Section 9 states in relevant part:

> Public employers may indemnify public employees . . . from personal financial loss,

- 9 -

F.2d 6, 8 (1st Cir. 1983) (recognizing that § 9 provides for the "indemnification of public employees by public employers for <u>civil rights</u> liability") (emphasis added); <u>Triplett</u> v. <u>Town of Oxford</u>, 791 N.E.2d 310, 315 (Mass. 2003) (noting that § 9 provides "public employers with the <u>discretion</u> to indemnify public employees for financial loss and expenses arising from certain civil actions (<u>intentional torts and civil rights violations</u>)") (second emphasis added).[6]

Because § 9 does not broadly prohibit the indemnification of "intent based civil rights claims," appellant

---

> all damages and expenses, including legal fees and costs . . . arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law, if such employee . . . at the time of such intentional tort or such act or omission was acting within the scope of his . . . employment. No such employee . . . shall be indemnified under this section for violation of any such civil rights if he acted in a grossly negligent, willful or malicious manner.

Mass. Gen. Laws ch. 258, § 9.

[6] Even the case that appellant claims supports the Davis estate's proposition confirms that § 9 provides for indemnification of intentional torts and civil rights actions. In <u>City of Boston</u> v. <u>Boston Police Patrolmen's Ass'n, Inc.</u>, the court expressly states that the statute permits indemnification for certain "liabilities arising out of intentional torts or civil rights violations." 717 N.E.2d 667, 668 (Mass. App. Ct. 1999).

- 10 -

wrongly asserts that the Davis and Messier estates were similarly situated. The Commonwealth did not indemnify the Davis estate's punitive damages award because § 9 bars indemnification for employees who have "acted in a grossly negligent, willful or malicious manner," Mass. Gen. Laws ch. 258, § 9, and the punitive damages were premised on the jury's finding that Westborough staff members acted in just this way because they harbored ill will toward Jason.[7]

No such finding or admission was made in the Messier case, which was settled before trial. Even assuming that the Messier estate asserted "intent based civil rights claims," as alleged in the complaint, we have no basis in this record to conclude that any such torts were committed in a grossly negligent, willful, or malicious manner. In the absence of such a finding, appellant provides no legitimate argument why § 9 would prohibit the Commonwealth from settling those claims for $2 million. Hence, because the statute prohibits payment of the Davis punitive damages award, but does not prohibit payment of the Messier settlement, appellant has failed to sufficiently allege that the two estates are similarly situated.

---

[7] Because the parties agree, we assume, without deciding, that § 9 prohibits indemnification of the punitive damages award.

To the extent appellant argues that the Messier and Davis cases are similar because the Messier defendants were alleged to have "acted in a grossly negligent, willful or malicious manner," Mass. Gen. Laws ch. 258, § 9, the Davis estate's argument has no merit. Unlike the Davis case, where a jury had determined that state employees deprived Jason of his civil rights and awarded him punitive damages, in the Messier settlement agreement (which appellant incorporated into the complaint), the state employee defendants "expressly den[ied] any violation of rights, and . . . any liability or wrongdoing in connection with the allegations and/or legal claims made by" the Messier estate.

## B. Due Process

To establish a due process claim under the Fifth and Fourteenth Amendments, a plaintiff must first assert "a legally plausible allegation of a protected property interest." Caesars Mass. Mgmt. Co., LLC v. Crosby, 778 F.3d 327, 332 (1st Cir. 2015) (internal quotation marks omitted). The plaintiff must identify a "legitimate claim of entitlement to the property in question -- a claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005) (internal quotation marks omitted). For this purpose, "'an abstract need or desire' or a 'unilateral expectation' are not sufficient to cement a constitutionally

- 12 -

protected interest."  Id. (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Appellant's due process claim fails because he has not made an allegation sufficient to establish a protected property interest.  Appellant argues that "[t]he [s]tate created property interest at issue here consists of the indemnification benefit which the Messier [e]state received under the Executive Branch and Executive Fiat Customs."  Appellant's Br. at 47.

Appellant's due process argument is premised on the same mistaken understanding of Massachusetts law as the Davis estate's equal protection argument.  He contends that the Commonwealth was prohibited under § 9 to pay the Messier settlement.  Therefore, he argues, appellees created a protected property interest by using their "executive fiat" to indemnify the Messier claims.  Appellant adds that the Davis estate was deprived of this property right because appellees refused to use their executive fiat to indemnify its punitive damages award.

However, as explained above, appellant has provided no valid argument for why § 9 barred the Commonwealth from paying the Messier settlement.  Contrary to appellant's contention, the statute clearly does not prohibit the indemnification of "intent based civil rights claims."  See, e.g., Triplett, 791 N.E.2d at 315.  Thus, appellant has not sufficiently alleged the creation of a property interest through payment of the Messier settlement by

means of "executive fiat." Nor has appellant provided any other argument as to how appellees created a protected property interest for the Davis estate by agreeing to settle the Messier case.[8] Because appellant has failed to allege any protected property interest at stake, the Davis estate's due process claim has no foundation and was correctly dismissed by the district court.[9] See Caesars Massachusetts Mgmt. Co., 778 F.3d at 335.

Affirmed.

---

[8] Appellant cites no authority for the general proposition that if a state settles a civil matter with one party it somehow creates a protected property interest for another party seeking a similar outcome. At most, it appears that appellant holds nothing more than a "unilateral expectation" that the Commonwealth will indemnify the Davis estate's punitive damages award because it settled the Messier case. Centro Medico del Turabo, Inc., 406 F.3d at 8.

[9] Appellant also argues that the district court violated the Davis estate's Seventh Amendment rights when it "unilaterally proclaimed, without the empanelment of a jury or the introduction of any evidence, that the Messier [defendants] acted only 'negligently' and that the Davis [e]state had actually only asserted claims under the [i]ndemnification [s]tatute." Appellant's Br. at 19. Appellant's argument has no merit. The district court never made such proclamations. After hearing argument from both parties, the court granted appellees' motion to dismiss because the complaint had failed to state a claim upon which relief could be granted.