VINCENT FILIPPONE & others[1] *vs.* MAYOR OF NEWTON & others.[2]

Middlesex. February 6, 1984. — August 7, 1984.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Indemnity. Public Employment,* Indemnification of employee. *Constitutional Law,* Home rule. *Municipal Corporations,* By-laws and ordinances. *Attorney at Law,* Conflict of interest. *Open Meeting Law.*

The finance committee of a city's board of aldermen, relying on the exception to the open meeting law, G. L. c. 39, § 23B, for discussion relating to litigation strategy, properly proceeded in executive session to discuss an appropriation of funds for payment of legal counsel to represent the city's mayor in a civil rights action. [625]

An ordinance of the city of Newton providing indemnity to certain public officers for personal financial loss and expenses resulting from civil rights claims did not conflict with G. L. c. 258, § 9, the State indemnity statute, and thus was not an improper exercise of the city's home rule powers. [627-630]

In the circumstances a city solicitor appropriately determined that a conflict of interest would result from his representation of both the city and its mayor as defendants in a civil rights action. [630-631]

CIVIL ACTION commenced in the Superior Court Department on December 23, 1981.

The case was heard by *James P. Donohue,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

---

[1] Other named plaintiffs, all taxpayers and residents of Newton, are: Max Berenson, Mary E. Bradley, Margaret M. Cutler, Dorothy Galanis, Eleanor Miele, Anthony D. Pellegrini, Alexander H. Pratt, Jr., Alice D. Pratt, George Romano, Linda M. Romano, Tobyanne Suyemoto, Alice Wartofsky, and Irving Wise.

[2] The other defendants are the city of Newton, the city solicitor, the comptroller, the treasurer and collector, the board of aldermen, and Mr. Edward J. Barshak.

*Arthur H. Goldsmith* for the plaintiffs.

*Edward J. Barshak* (*Daniel M. Funk,* City Solicitor, *Denise M. Provost,* Assistant City Solicitor & *Natasha C. Lisman* with him) for the Mayor of Newton & others.

*Francis X. Bellotti,* Attorney General, & *Roberta Thomas Brown,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

NOLAN, J. This matter is before us following the granting of the defendants' application for further appellate review. The Appeals Court held invalid, as an impermissible exercise of home rule powers, a Newton ordinance providing for indemnification of municipal employees who are named as defendants in civil rights actions. *Filippone* v. *Mayor of Newton,* 16 Mass. App. Ct. 417, 426 (1983). For reasons set forth below, we disagree with the conclusion of the Appeals Court and we affirm the judgment for the defendants in the Superior Court.[3]

1. *Factual background and prior proceedings.* This case arises from underlying litigation in which a former employee of the city of Newton (city) alleges that the mayor wrongfully terminated her employment and, in so doing, deprived her of due process of law. Prior to commencing suit, the former employee made a written demand for relief upon the mayor and the city. In the time between that demand and the filing of her complaint, the city enacted Ordinance No. R-129, which provides for the city's indemnification of officials who are named defendants in civil rights actions.[4] As a matter of State

---

[3] We gratefully acknowledge the submission of an amicus brief by the office of the Attorney General.

[4] Ordinance No. R-129, approved in March, 1981, adding § 2-116 to the Revised Ordinances of Newton (1979), provides in relevant part as follows:

"The City shall indemnify and save harmless [certain public officials including] the Mayor from personal financial loss and expenses, including costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment by reason of any act or omission which constitutes a violation of the civil rights of any person under any federal or state law; if such [public official] at the time of such act or omission was acting within the scope of his official duties or employment; provided, however, that such [public official] shall provide reasonable cooperation to the City in the negotiation, investigation and defense of any claim or action brought as a result of such act or omis-

law, G. L. c. 258, § 9, provides authority for public employers' indemnification of public employees.[5]

Following the commencement of the discharged employee's suit, the city solicitor undertook to represent the mayor. A few months later, however, he perceived there to be a conflict of interest in representing both the city and the mayor. He notified the mayor in writing of his withdrawal and announced his intention to seek an appropriation to pay the fees of outside counsel for the mayor's representation.

In November, 1981, the finance committee of the board of aldermen considered the appropriation request. An assistant city solicitor suggested that discussion of the appropriation request be had in executive session, relying on the exception

---

sion. No such [public official] shall be indemnified under this section for violation of any civil rights if he or she acted intentionally or in a grossly negligent, willful or malicious manner.

"The defense and/or settlement of any such claim shall be undertaken or negotiated by the City Solicitor, his agent or designee. However, in the event that the City Solicitor determines that a conflict of interest has arisen or is likely to arise by his mutual defense of the City of Newton and the officer(s) in question, the officer(s) in question shall not be defended by the City Solicitor, his agent or designee but shall seek outside counsel for such defense. The expense incurred by the employee for outside counsel shall be borne by the City unless the Mayor and the Board of Aldermen shall deem said legal fees to be unreasonable in which event said legal fees shall be subject to the fee arbitration procedure of the Massachusetts Bar Association.

"Nothing in this section shall be deemed to limit the effect of any indemnification statute applicable to the City at the time of any such act or omission. This section shall apply to any settlement or judgment made in compliance with this section on or after the date this section is approved."

[5] General Laws c. 258, § 9, as amended by St. 1980, c. 315, § 2, provides in relevant part: "Public employers may indemnify public employees from personal financial loss and expenses, including legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a violation of civil rights of any person under any federal or state law; if such employee or official at the time of such intentional tort or such act or omission was acting within the scope of his official duties or employment. No such employee or official shall be indemnified under this section for violation of any such civil rights if he acted in a grossly negligent, willful or malicious manner."

to the open meeting law, G. L. c. 39, § 23B, which concerns strategy in litigation.

Following its closed session discussion, the committee reconvened in open session, and voted unanimously to approve the appropriation. In its public report, the committee stated that $10,000 had been appropriated to pay legal fees for services rendered by Mr. Edward M. Barshak, who had been retained to represent the mayor. The committee report cited the city solicitor's conflict of interest as the reason for appropriating funds for outside counsel. Subsequently, the board of aldermen affirmed and ordered the appropriation. The instant litigation, brought as a ten-taxpayer action seeking declaratory and other relief, was commenced shortly thereafter.[6]

Two challenges to the appropriation were presented: first, that the finance committee's executive session violated the open meeting law, G. L. c. 39, § 23B, thereby invalidating the action taken therein; and second, that the mayor was not entitled to indemnity under Ordinance No. R-129.

On cross motions for summary judgment, the trial judge ruled that the challenge to the finance committee action was untimely made despite a stipulation of the parties that it was timely. We think that the judge was bound by such stipulation. However, in dismissing that claim, he also ruled that discussion of the city solicitor's conflict of interest was squarely within the "litigation strategy" exception to the open meeting law. The judge correctly perceived that public discussion of the potentially adverse interests of the mayor and the city could involve disclosure of the legal theories of the defendants, thereby possibly impairing their strength in settlement negotiations or at trial.

The judge next considered the plaintiffs' arguments against indemnification. First, he ruled that the determination whether there existed a conflict of interest was entrusted to the city solicitor, whose decision could not be disregarded by the court

---

[6] The parties stipulated that Mr. Barshak would receive no payment for his services until the trial court decided the case; the Appeals Court stayed payment.

absent clear error or abuse of discretion. Where the city solicitor might be called to testify against the mayor, and the mayor might have a cause of action against the city, no circumstances existed which would warrant the conclusion that the city solicitor's assessment of the conflict was clearly wrong or an abuse of discretion.

The judge agreed with the plaintiffs' argument that the mayor could not be indemnified for wilful or grossly negligent misconduct. However, he ruled that that characterization of the mayor's activities could not be made until the conclusion of the underlying litigation. Disqualification from indemnification would not occur until the mayor was found liable in damages for conduct not covered by the ordinance: hence, the issue was not ripe.

Concerning attorneys' fees, however, the judge ruled that the ordinance required that all city officials be represented at the city's expense, whether or not by the city solicitor. The judge determined that the provision for attorneys' fees in the ordinance operated independently of the indemnification section. Payment of counsel fees need not await a trial's outcome and a concomitant conclusion that indemnification is warranted.

Having ruled that payment for independent representation might be made before the end of litigation, the judge nonetheless disapproved the appropriation of $10,000 for Mr. Barshak's services, because the ordinance required payment of only those expenses actually "incurred." As payment should await a statement for services actually rendered, and approved by the board and the mayor, the judge declared the $10,000 appropriation invalid as not in compliance with Ordinance No. R-129. However, the judge declared that payment should be made upon determination by the mayor and the board that a statement submitted by Mr. Barshak was reasonable.[7]

The Appeals Court reversed, drawing distinctions between the Commonwealth's indemnification statute, G. L. c. 258,

---

[7] We assume that the judge contemplated that a new appropriation would be made.

§ 9, and Ordinance No. R-129, and concluding that the ordinance was an invalid attempt to exercise home rule powers under art. 89, § 6, of the Massachusetts Constitution (Home Rule Amendment). *Filippone* v. *Mayor of Newton,* 16 Mass. App. Ct. 417, 426 (1983).[8] The Appeals Court held that there was error in the judge's conclusion that the mayor's legal expenses be borne by the city prior to the end of litigation, because the mayor had not yet incurred a "loss" as required by the language of the statute and ordinance. *Id.* at 423. Finally, the Appeals Court concluded that the judge should further consider the issue of the city solicitor's conflict of interest. *Id.* at 428-432. We have reviewed the record, and we do not share the view of the Appeals Court.

2. *Distinctions between the indemnification statute and the Newton ordinance.* General Laws c. 258, § 9, provides that "[p]ublic employers may indemnify public employees from personal financial loss and expenses, including legal fees and costs," in civil rights and intentional tort actions in an amount not to exceed $1,000,000. Such indemnity is available only for acts within the scope of a public employee's employment, and is unavailable where an official or employee violates a claimant's civil rights in a grossly negligent, wilful, or malicious

---

[8] The home rule issue was presented for the first time before the Appeals Court. 16 Mass. App. Ct. at 421. However, the court was of the view that important questions of public interest warranted their consideration of the home rule question. *Id.* We are inclined to this view as to other matters before us. We note that there is doubt whether issues remain for adjudication. The judge declared the $10,000 appropriation invalid. The defendants have not appealed this judgment, and technically there no longer exists an illegal appropriation which the plaintiffs may challenge by means of a taxpayers' action under G. L. c. 40, § 53. Plaintiffs in a ten-taxpayer action cannot better their standing by casting it in the form of a request for declaratory relief. *Spear* v. *Boston,* 345 Mass. 744, 746-747 (1963); *Povey* v. *School Comm. of Medford,* 333 Mass. 70, 71-72 (1955). Additionally, because the judge's action in fact declared the appropriation invalid, which was the relief sought by the plaintiffs, they are not persons aggrieved by the judgment. Cf. *Somerset* v. *Dighton Water Dist.,* 347 Mass. 738, 739 n.1 (1964). However, the issue of the validity of the ordinance presents an important question of public interest which must at some point be resolved. We therefore depart from these rules to consider this matter. See *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

manner. *Id.* The first paragraph of Newton Ordinance No. R-129 provides for indemnity by the city from "personal financial loss and expenses" on similar terms, but does not mention attorneys' fees. However, the second paragraph of the ordinance provides that the defense of civil rights actions shall be undertaken by the city solicitor unless he "determines that a conflict of interest has arisen or is likely to arise by his mutual defense" of the city and the official. In such cases, the official "shall seek outside counsel," for which the "expense incurred . . . shall be borne by the City," unless the board of aldermen and the mayor find the fees unreasonable, in which instance provision for arbitration is made.

The Appeals Court attached significance to the inclusion of legal fees among the indemnified losses and expenses in G. L. c. 258, § 9. 16 Mass. App. Ct. at 422. Whether a case might fall within the exception to the right of indemnity in both § 9 and the ordinance (e.g., if a finding of grossly negligent, wilful, or malicious conduct was warranted) cannot be determined until questions in the underlying litigation are resolved. *Id.* The Appeals Court interpreted the judgment to permit payment of legal fees prior to any determination of the applicability of any exception. *Id.* at 422-423. However, the Appeals Court concluded that the trial judge's construction of the ordinance would permit indemnity for legal expenses where none would be warranted for substantive liability. *Id.* at 423.

The language of the ordinance does not seem to support this interpretation. Provisions for indemnity should be construed in a manner which will effectuate their purpose. *Massachusetts Turnpike Auth.* v. *Perini Corp.,* 349 Mass. 448, 452 (1965). That the city chose to set out in a separate paragraph its procedures for representation of employees in civil rights actions and for retention of outside counsel in cases involving a conflict of interest does not lead to the conclusion that a "free" defense would be provided regardless of the limitations upon indemnity enumerated in the ordinance's first paragraph. Read in its entirety, the ordinance enumerates the substantive conditions for indemnity in its first paragraph, and the procedures for representation then follow. Although more attentive draftsmanship

might have included reiterations to exceptions from indemnity in the procedural section, this court will not undertake either to rewrite the ordinance or to strain to impose an interpretation not warranted by the ordinance in its entirety. See *Whittle* v. *Pagani Bros. Constr. Co.,* 383 Mass. 796, 799 (1981). We conclude that there is no significant difference between the statute and the ordinance as to the circumstances under which indemnity for public officials is available.

In discussing the meaning of the State indemnification statute, the Appeals Court distinguished indemnity from "loss" as opposed to indemnity from "liability." The former, it concluded, requires actual payment for losses incurred, whereas the latter right arises upon the establishment of liability, regardless of whether any payment has been made. 16 Mass. App. Ct. at 423. We do not perceive this distinction, for both speak to indemnification from "loss," and neither mentions "liability." Such distinctions as may have been made in other contexts between "loss" and "liability" are inapposite, and do not lead us to conclude that payment of legal expenses may be made only at the conclusion of the litigation. As a matter of policy, public indemnification of public officials serves in part to encourage public service. Judgments against such public officials in actions for civil rights or intentional torts could cause financial ruin. This policy would be defeated if the legal expenses of civil rights litigation were to be borne personally throughout years of pretrial activity, trial, and appeal and only later, if at all, reimbursed.[9]

No inconsistency exists between the statute and ordinance on this ground, for neither requires that the defendant official first pay his or her own legal fees and only later seek reimbursement from a public employer. Further, we note that the provision of funds for legal fees for public employees need not result in unnecessary or unwarranted expenditures by public

---

[9] The Appeals Court discussed in some detail the desirability or availability of insurance coverage as it relates to the indemnification statutes. 16 Mass. App. Ct. at 425-426. Although this concept is not unattractive, its consideration is better left to the Legislature.

employers. At the conclusion of litigation, a determination can be made as to whether the defending official's wrongful conduct, if any, was intentional, grossly negligent, wilful, or malicious. Such a determination would rest in the sound discretion of the public employer. If an exception to indemnification applies, the public employer might then recover from the official those sums expended for legal services on his or her behalf.

3. *Validity of the ordinance under art. 89.*[10] Relying on the above distinctions between the provisions of G. L. c. 258, § 9, and Ordinance No. R-129, the Appeals Court concluded that the ordinance substantially broadened the scope of indemnification available to public officials. 16 Mass. App. Ct. at 427-428 (1983). In the Appeals Court's view, the breadth of Ordinance No. R-129 made that local enactment inconsistent with State law, and concluded that it was an invalid exercise of home rule powers. *Id.* See *Bloom* v. *Worcester,* 363 Mass. 136, 155 (1973). Our discussion in the first section of this opinion leads us to conclude that no significant differences exist between the legislative enactment and the local ordinance. Therefore, invalidation of the ordinance is not required. See *Bloom* v. *Worcester, supra* at 154.

4. *The city solicitor's conflict of interest.* The city solicitor's determination that his representation of the city and the mayor would lead to a conflict of interest was appropriate in the circumstances. See generally *Edgartown* v. *State Ethics Comm'n,* 391 Mass. 83, 89 (1984). Perception of conflicts of interest is entrusted in the first instance to individual attorneys. See generally *Borman* v. *Borman,* 378 Mass. 775, 790 (1979). Withdrawal in face of a conflict is not a choice to be regarded lightly, particularly where there exists no taint of self-interest

___

[10] Article 2 of the Amendments to the Massachusetts Constitution, as appearing in art. 89, § 6, of the Amendments provides: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court . . . and which is not denied, either expressly or by clear implication, to the city or town by its charter. This section shall apply to every city and town, whether or not it has adopted a charter . . . ."

or personal gain. We are disinclined to speculate on a hypothetical course of litigation which would remove the conflict perceived by the city solicitor. Nor are we inclined to the view that the ordinance permits the withdrawal of the city solicitor and retention of outside counsel only where the facts indicate that a "mutual defense" causes the conflict of interest. 16 Mass. App. Ct. at 431. Greater clarity in the ordinance may be warranted, but we will not impose a construction which would defeat the manifest intent of the city to provide outside counsel where ethical considerations preclude representation by the city solicitor. Given the myriad situations wherein disqualification is an ethical imperative, a contrary reading might mean that public counsel could fulfil the obligations imposed by ordinance only by violating the rules of this court. There is no need to remand for further evidence on this point.

5. *Other issues.* The plaintiffs assert error in the trial judge's refusal to permit further discovery prior to ruling on summary judgment, in his denial of the plaintiffs' motion to consolidate this matter with the underlying civil rights litigation, and in his refusal to allow substitute service of subpoenas and waiver of witness fees. There was no error. The plaintiffs failed to file an affidavit pursuant to Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974). See *First Nat'l Bank* v. *Slade,* 379 Mass. 243, 244-245 (1979), and cases cited. No error occurred in the denial of the motion to consolidate, as delay in resolution of the attorneys' fees issue until the conclusion of the underlying litigation would have effectively granted to the plaintiffs the relief they sought. Finally, no harm resulted in any limitation of the plaintiffs' presentation of witnesses, and the judge's memorandum of decision on summary judgment indicates his decision was based only upon the parties' pleadings and affidavits.[11]

For all the foregoing reasons, we see no error in the judgment.

*Judgment of the Superior
Court affirmed.*

---

[11] The record indicates that the judge "heard testimony from several witnesses regarding these motions" (cross motions for summary judgment), but only the pleadings and affidavits were considered.