MARK MAIMARON vs. COMMONWEALTH
(and a companion case[1]).

Suffolk. January 4, 2007. - May 14, 2007.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & CORDY, JJ.

*Massachusetts Tort Claims Act. Commonwealth,* Officers and employees.
*Indemnity. Public Employment,* Indemnification of employee. *State Police.*
*Police,* Commonwealth's liability. *Agency,* Scope of authority or
employment. *Damages,* Interest, Attorney's fees. *Civil Rights,* Damages.
*Words,* "Duty to defend," "Wilful, wanton, or malicious," "Color of State
law."

This court concluded that the Commonwealth violated its duty to defend the
plaintiff State trooper under G. L. c. 258, § 9A, in an action brought by a
second plaintiff against him for violation of the second plaintiff's civil
rights in arresting him when the trooper was off duty, where the plain
language of § 9A mandated such representation [173-175]; therefore, the
trooper was entitled to awards of prejudgment interest for his defense costs
from the date of an arbitration award the second plaintiff received as a
result of the relevant incident to the date of the entry of the judgment in
the present action, and postjudgment interest as well as attorney's fees and
costs on appeal [181-182]; however, summary judgment in favor of the
second plaintiff was inappropriate on the issue whether the Commonwealth
was obligated under § 9A to indemnify that plaintiff (as assignee) for the
underlying judgment because triable issues of fact existed concerning the
applicability of the exclusions in § 9A, namely, whether the trooper's
conduct had occurred outside the scope of his official duties, and whether
the trooper acted in a wilful, wanton, or malicious manner [175-181].

CIVIL ACTIONS commenced in the Superior Court Department
on October 17, 2002, and October 23, 2002.

After consolidation of the cases, motions for summary judg-
ment were heard by *Patrick F. Brady,* J.; the matter of an as-
sessment of damages was heard by *Nancy Staffier Holtz,* J., and
entry of a judgment on the findings of the court was ordered by
her.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1]David Oxner *vs.* Commonwealth.

*Rosemary Connolly,* Assistant Attorney General (*Doris Helen White,* Assistant Attorney General, with her) for the Commonwealth.

*Max D. Stern* (*Kenneth M. Resnik* with him) for Mark Maimaron.

*Richard Eric Brody* for David Oxner.

GREANEY, J. On November 2, 1998, the plaintiff Mark Maimaron brought an action in the Superior Court under the Massachusetts Tort Claims Act, G. L. c. 258, against State Trooper David Oxner, several other State troopers, and the Commonwealth, seeking to recover damages for injuries he sustained as the result of an alleged illegal seizure and arrest. The incident involved an altercation in 1995, when Oxner was not on duty (underlying action). Maimaron asserted that Oxner had violated his civil rights as protected by Federal and State constitutional law and statutes, 42 U.S.C. § 1983 (2000), and G. L. c. 12, § 11I, and had committed the intentional torts of assault and battery, malicious prosecution, false arrest, and abuse of process, in making the seizure and arrest. In 2001, the Commonwealth settled Maimaron's claims against it and the State police officers other than Oxner. Thereafter, Maimaron and Oxner agreed to participate in binding arbitration, which resulted in an award and judgment, including attorney's fees, in Maimaron's favor. Unable to satisfy the judgment against him, Oxner entered a settlement agreement and assignment of rights with Maimaron in which Oxner assigned his right to Maimaron[2] to indemnification (of the judgment in the underlying action) by the Commonwealth pursuant to G. L. c. 258, § 9A.[3]

Oxner and Maimaron commenced separate actions against the Commonwealth that have been consolidated. In his complaint, Oxner had sought to recover attorney's fees and costs that he

---

[2]The assignment specifically excluded Oxner's right to recover his attorney's fees and costs in the underlying action.

[3]General Laws c. 258, § 9A, provides in relevant part:

"If, in the event a suit is commenced against a member of the state police or an employee represented by state bargaining unit five, by reason of a claim for damages resulting from an alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law, the commonwealth, at the request of the affected police officer, shall provide

incurred defending the underlying action, alleging that the Commonwealth had violated its duty under G. L. c. 258, § 9A, in failing to defend him in that action.[4] Maimaron, as assignee, claimed that the Commonwealth had violated its indemnification obligation under G. L. c. 258, § 9A, and sought to collect the amount of the judgment entered against Oxner in the underlying action, as well as interest, and attorney's fees and costs. The parties filed cross motions for summary judgment. A Superior Court judge granted summary judgment in favor of Oxner and Maimaron, and the Commonwealth appealed. We transferred the case here on our motion to determine whether the Commonwealth was obligated under G. L. c. 258, § 9A, to defend Oxner in the underlying action and to indemnify Maimaron (as assignee) in connection with the judgment Maimaron obtained against Oxner in the underlying action.

We conclude that the Commonwealth violated its duty to defend Oxner under G. L. c. 258, § 9A, and, consequently, summary judgment in favor of Oxner was proper on this issue. We also conclude that summary judgment in favor of Maimaron was inappropriate on the issue whether the Commonwealth was obligated under § 9A to indemnify Maimaron (as assignee) for the underlying judgment because triable issues of fact exist concerning the applicability of the exclusions in § 9A, namely,

for the legal representation of said police officer.

"The commonwealth shall indemnify members of the state police . . . from all personal financial loss and expenses, including but not limited to legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment resulting from any alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law; provided, however, that this section shall apply only where such alleged intentional tort or alleged act or failure to act occurred within the scope of the official duties of such police officer.

"No member of the state police . . . shall be indemnified for any violation of federal or state law if such member or employee acted in a wilful, wanton, or malicious manner."

[4]Oxner also sought to recover any attorney's fees and costs he incurred in pursuing reimbursement of the attorney's fees and costs he had incurred in defending himself in the underlying action.

whether Oxner's conduct had occurred outside the scope of his official duties, and whether Oxner had acted in a wilful, wanton, or malicious manner. The case is remanded for further proceedings on those issues.

Except where specifically noted, the parties essentially agree on the following facts for purposes of summary judgment. On the evening of November 22, 1995, Oxner and his friend Stephen Roche went to a lounge in Quincy. They were later joined by Oxner's wife and her female friend. Oxner, who was not on duty that evening, had several drinks at the bar.

That same evening, Maimaron, an ironworker, was a patron at the lounge, and had consumed approximately ten beers. Maimaron met Oxner, whom Maimaron believed was actually a coworker from his work site, although Oxner told Maimaron that he was a State trooper. Maimaron repeatedly confronted Oxner with this inaccurate belief, despite Oxner's repeated denials.

After midnight, Maimaron and Oxner encountered each other in the parking lot outside the lounge. A heated exchange ensued and Oxner demanded to see Maimaron's identification. Maimaron declined, and was turning to leave, when Oxner hit him on the side of his head and grabbed his shoulder.[5] Fearing for his safety, Maimaron sprayed mace (which he was licensed to carry) into Oxner's face, and then ran down the street.

Oxner pursued Maimaron on foot, holding out his badge, identifying himself as a police officer, whistling, and telling Maimaron to stop because he was under arrest. Roche joined in the pursuit and caught up with Maimaron. Roche struck Maimaron from behind, knocking him to the ground. Maimaron raised his head and tried to get up, at which point Oxner slammed Maimaron down, hitting his face into the pavement.[6]

Oxner and a bystander contacted the Quincy police depart-

[5]This fact is supported by the deposition testimony of Maimaron, who testified, "I was walking and I was struck from behind, somebody, like, hitting the side of my head and then grabbing my shoulder," and that when he turned around he was facing Oxner. Contending that the arbitrator's findings of fact govern, Maimaron and Oxner note that the arbitrator here found only that Oxner grabbed Maimaron by the shoulder and tried to detain him. The arbitrator did not find that Oxner struck Maimaron on the side of his head.

[6]With respect to this fact, the Commonwealth alleges that Oxner "slammed

ment. Oxner identified himself as an off-duty officer and requested an ambulance for Maimaron, who was bleeding profusely. Roche disappeared into the crowd of spectators.

When Quincy police officers arrived, Oxner told them that he had been assaulted by Maimaron with mace and that an "unknown white male" helped subdue Maimaron by tackling him.

Maimaron suffered extensive injuries, including multiple facial fractures, broken teeth and a detached palate. His jaws were wired shut for six weeks, and he underwent extensive rehabilitation and the implantation of titanium plates in his face. Maimaron sustained long-lasting injuries, including permanent change in his appearance, persistent vertigo and headaches, as well as emotional and psychological distress.

Oxner subsequently filed charges against Maimaron for assault and battery by means of a deadly weapon, as well as for assault and battery on a police officer.

The United States Attorney's office conducted an investigation into the altercation and, on August 6, 1996, entered into a plea agreement with Oxner and the office of the Attorney General. Pursuant to the agreement, on September 4, 1996, Oxner pleaded guilty to assault and battery of Maimaron and to filing a false written report by a public officer, for which he was sentenced to unsupervised probation for one year.

In January, 1997, a trial board of the State police determined that Oxner had violated several State police administrative rules and regulations. The board suspended him without pay for four months, and required that he complete ethics training. On January 3, 1997, the Norfolk County district attorney's office entered a nolle prosequi on the criminal complaint Oxner had filed against Maimaron.

---

Maimaron's head onto the pavement several times" and "then knelt on one knee and continued slamming Maimaron's face on the pavement." We disregard this version of the facts because it is insufficiently predicated on statements alleged in an unverified complaint. See *Godbout* v. *Cousens*, 396 Mass. 254, 262 (1985) (allegations contained in unverified complaint have no evidentiary weight). The arbitrator's finding that Oxner "slammed [Maimaron] down, hitting his head on the pavement," is supported by Oxner's deposition testimony and by Oxner's admission of facts made in connection with his guilty pleas to assault and battery of Maimaron and to filing a false written report by a public officer.

In response to Maimaron's underlying action, Oxner sought defense and indemnification from the Commonwealth during the course of litigation, but the Commonwealth repeatedly declined his requests. After the Commonwealth had settled with Maimaron, Maimaron and Oxner voluntarily entered into binding arbitration. The Commonwealth was notified in writing by Oxner's attorney that the arbitration proceedings were about to begin, and Oxner again demanded that the Commonwealth assume his defense. The Commonwealth responded in writing that it "decline[d] to provide . . . indemnification and/or defense of . . . Oxner [and did not] foresee . . . changing its stance on the issue." The Commonwealth did not participate in the arbitration.

In his award, the arbitrator concluded that Oxner had violated Maimaron's civil rights by committing the torts of assault and battery and false arrest. The arbitrator determined that Maimaron was entitled to damages from Oxner in the amount of $363,682. In addition, the arbitrator found the following: at all times during, and after, his confrontation with Maimaron, Oxner was acting within the scope of his employment as a State police officer; Oxner was acting under color of State law throughout the altercation and arrest because, under State police rules and regulations, a State police officer is subject to recall twenty-four hours a day and is instructed to take immediate enforcement action for violations of law observed, and Oxner was following State police regulations in attempting to arrest Maimaron for perceived criminal actions; Oxner violated Maimaron's rights under the Fourth Amendment to the United States Constitution during the assault and battery and subsequent false arrest; Oxner never intended to injure Maimaron during the arrest; and Oxner did not act in a "malicious or wanton" manner.[7] On July 9, 2002, a Superior Court judge entered judgment for Maimaron in the amount of $363,682, and included an award for attorney's fees and costs in the amount of $69,243.52.

In connection with the instant action, the Superior Court judge who ruled on the parties' cross motions for summary

---

[7]The arbitrator did not use the term "wilful" which appears in G. L. c. 258, § 9A, along with "malicious or wanton." We can safely assume that he intended to use that term as well, and we shall describe the statutory standard in this opinion using all three terms.

judgment (in favor of Oxner and Maimaron) concluded that, because the Commonwealth had violated its mandatory duty to defend Oxner against Maimaron's claim in the underlying action, the Commonwealth was bound by the arbitrator's findings and was precluded from arguing that Oxner was not acting within the scope of his official duties or that his conduct was wilful, wanton, or malicious. Judgment entered awarding damages to Maimaron in the amount of $363,682, due to the acts of Oxner; attorney's fees (for litigating the underlying action) to Maimaron in the amount of $69,243.52; attorney's fees (for litigating the instant action) to Maimaron in the amount of $29,951.88; and attorney's fees (for litigating the underlying and instant actions) to Oxner in the amount of $84,879. The judgment was amended on February 24, 2005, to add a provision for "interest as provided by law" in response to a motion by Maimaron seeking accrued prejudgment and postjudgment interest. As has been stated, this appeal followed. Both Oxner and Maimaron request attorney's fees and costs incurred in the appeal. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

1. *Duty to defend.* The judge correctly concluded that the Commonwealth had a mandatory obligation to provide legal representation (the duty to defend) to Oxner under G. L. c. 258, § 9A. We stated in *Pinshaw* v. *Metropolitan Dist. Comm'n*, 402 Mass. 687, 700 (1988) (*Pinshaw*), that, under G. L. c. 258, § 9A, "[t]he Commonwealth, at the request of the affected police officer, is required to provide for the officer's legal representation in a tort or civil rights action." A review of the plain language of § 9A, interpreted in a way to effectuate its purpose, mandates this result.

The first paragraph of G. L. c. 258, § 9A, pertains solely to the duty to defend. See note 3, *supra*. Its language, "shall provide for the legal representation of said police officer," imposes a mandatory obligation. See *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983) (word "shall" imports mandatory obligation). That obligation arises when (1) a request for legal representation is made by the affected police officer; and (2) a lawsuit is brought against the officer alleging an intentional tort or a violation of civil rights. These requirements were present here.

Relying on language in the second paragraph of G. L. c. 258, § 9A, that provides, "this *section* shall apply only where such alleged intentional tort or alleged act or failure to act occurred within the scope of the official duties of such police officer," the Commonwealth maintains that its duty to defend is conditioned on whether the police officer had been acting within the scope of his official duties (emphasis added). We disagree. This language, together with the language also appearing in that paragraph that the indemnification obligation includes "personal financial loss and expenses, including but not limited to legal fees and costs," permits the Commonwealth, if it is *later* determined that the police officer acted outside the scope of his official duties or acted in a wilful, wanton, or malicious manner, to seek reimbursement of legal expenses.[8] See *Pinshaw, supra* at 700-701. To conclude otherwise would undermine the statute's purpose, see *id.* at 696 ("purpose of § 9A is to provide an exception to the general rule excluding public liability for intentional torts of public employees"), which recognizes that the requirement of mandatory indemnification "evidences the Legislature's determination that intentional torts and civil rights violations arise frequently in the scope of police work, and that indemnification of officers against such claims encourages police service." *Id.* The same applies equally to the duty to defend provision. Cf. *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 629 (1984) (stating, in connection with G. L. c. 258, § 9, dealing with permissive indemnification of public employees, that policy behind indemnification "would be defeated if the legal expenses of civil rights litigation were to be borne personally throughout years of pretrial activity, trial, and appeal and only later, if at all, reimbursed").

The Commonwealth argues that a State police regulation providing that, "[a]s a general rule, the payment of private legal

---

[8]The Commonwealth's reasons for refusing its duty to defend, such as the fact that Oxner had pleaded guilty to two criminal charges and was found to be in violation of various State police administrative rules and regulations, do not bear on the Commonwealth's duty to provide a defense. Rather, if such reasons later are found to take Oxner's conduct outside the scope of his official duties or to amount to wilful, wanton, or malicious behavior, the Commonwealth would be entitled to seek reimbursement of the legal fees incurred in his defense.

fees and litigation costs shall be made only at the conclusion of the underlying tort or civil litigation," 515 Code Mass. Regs. § 4.02(5) (1998), compels the interpretation of § 9A that it urges. The Commonwealth failed to raise this point below and, therefore, has waived it. See *Sugarman* v. *Board of Registration in Med.*, 422 Mass. 338, 347 (1996). In any event, to the extent this regulation conflicts with the statute, the statute governs. See *Pinecrest Village, Inc.* v. *MacMillan*, 425 Mass. 70, 73 (1997).

In sum, under G. L. c. 258, § 9A, the Commonwealth was required to defend Oxner in keeping with what we have discussed and with the principles stated in the *Pinshaw* decision. See *Pinshaw*, *supra* at 700-701 & nn.18-19.

2. *Duty to indemnify Maimaron (as assignee).* Under G. L. c. 258, § 9A, the Commonwealth is required to indemnify a member of the State police "from all personal financial loss and expenses, including but not limited to legal fees and costs . . . arising out of any claim, action, award, compromise, settlement or judgment resulting from any alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law." There are two exclusions: (1) where the alleged act did not occur "within the scope of the official duties of such police officer"; and (2) where the police officer "acted in a wilful, wanton, or malicious manner." *Id.*

The Commonwealth argues that the judge erred in granting summary judgment on the indemnification issue, maintaining that it should have been permitted to litigate the two exclusions. The judge rejected the Commonwealth's argument on the basis of the rule, applied frequently in insurance cases, that an insurer who has wrongfully refused to defend its insured cannot relitigate coverage issues and, thus, becomes liable to indemnify the damages assessed in the third-party action. See *Miller* v. *United States Fid. & Guar. Co.*, 291 Mass. 445, 449 (1935) (when action against insured is within terms of policy, "indemnitor, after notice and an opportunity to defend, is [if it refuses to defend] bound by material facts established in an action against the indemnitee"). See also *Blais* v. *Quincy Mut. Fire Ins. Co.*, 361 Mass. 68, 70 (1972); *Trustees of N.Y., N.H. & H.R.R.* v. *Tileston & Hollingsworth Co.*, 345 Mass. 727, 732 (1963); *Jertson*

*v. Hartley*, 342 Mass. 597, 602-603 (1961); 1 R.H. Long, Liability Insurance § 5.05 (2006).

The third-party action here is the suit brought by Maimaron against Oxner, and the relevant decision for determining the application of the rule set forth above is the arbitrator's decision. That arbitration, in which the Commonwealth was not a party and did not otherwise participate, established that Oxner had, under 42 U.S.C. § 1983, violated Maimaron's civil rights by committing the torts of assault and battery and false arrest. In making these determinations, the arbitrator concluded that Oxner was acting "within the scope of his employment as a Massachusetts State [p]olice [o]fficer," that he was also acting under color of State law, and that his conduct was not wilful, wanton or malicious.

We first address the scope of employment issue as it relates to the color of State law issue that was the concern of the arbitrator in Maimaron's § 1983 claim. The *Pinshaw* decision established that "the scope of . . . official duties" exclusion in § 9A calls for the application of common-law respondeat superior principles. *Pinshaw*, *supra* at 694. It went on to set forth those principles as follows:

> " 'The general respondeat superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work.' *Howard* v. *Burlington*, [399 Mass. 585, 590 (1987)], and cases cited. In determining the scope of employment, the finder of fact must consider whether the conduct complained of is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether 'it is motivated, at least in part, by a purpose to serve the employer.' *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). See Restatement (Second) of Agency § 228 (1958). . . .
>
> "If an employee 'acts from purely personal motives. . . in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable.' W. Prosser & W. Keeton, Torts 506 (5th ed. 1984). See *Miller* v. *Federated Dept. Stores, Inc.*, 364 Mass. 340, 348 (1973). However,

'[t]he fact that the predominant motive of the [employee] is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority.' *Wang Labs., Inc.* v. *Business Incentives, Inc.*, *supra* at 859-860. See *Coleman* v. *Smith*, 814 F.2d 1142 (7th Cir. 1987) (intentional false arrest); W. Prosser & W. Keeton, *supra* at 506-507. 'If the act complained of was within the scope of the servant's authority, the master will be liable, although it constituted an abuse or excess of the authority conferred. The master . . . is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person.' *Kent* v. *Bradley*, 480 S.W.2d 55, 57 (Tex. Civ. App. 1972). See *Johnson* v. *Weinberg*, 434 A.2d 404, 408 (D.C. App. 1981). Where a party's state of mind or motive is in issue, summary judgment is disfavored. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984)."

*Pinshaw*, *supra* at 694-695.

The determination whether a defendant acted under color of State law is one of two essential requirements for an action under 42 U.S.C. § 1983. *Zambrana-Marrero* v. *Suarez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999).[9] Generally speaking, there are three basic principles that define the scope of "acting under the color of State law" requirement. First, "a public employee acts under color of [S]tate law while acting in his official capacity or while exercising his responsibilities pursuant to [S]tate law." *West* v. *Atkins*, 487 U.S. 42, 50 (1988). That is the basic proposition. Second, a public official ("State actor") acts under color of State law if he acts under "pretense" of law, but not when he is acting as a private individual pursuing his own goals. See, e.g., *Huffman* v. *County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998), cert. denied, 526 U.S. 1038 (1999)

[9]The other essential requirement is that the conduct "worked a denial of rights secured by the Constitution or laws of the United States." *Zambrana-Marrero* v. *Suarez-Cruz*, 172 F.3d 122, 125 n.7 (1st Cir. 1999), quoting *Martinez* v. *Colon*, 54 F.3d 980, 984 (1st Cir. 1995).

(defendant deputy's actions not related to performance of official duties when he shot and killed victim during barroom brawl where defendant used sheriff department's ammunition but his own gun, was not in uniform, did not identify himself as a sheriff's deputy, and did not issue commands). As the United States Court of Appeals for the Ninth Circuit explained, "Officers who engage in confrontations for personal reasons unrelated to law enforcement, *and* do not 'purport[] or pretend[]' to be officers, do not act under color of law" (emphasis added). *Id.*

Third, and of importance to this case, when a public official "misuses" or "abuses" the authority given him by the State (i.e., if he acts outside the scope of his employment) he nevertheless acts under color of State law where he is "clothed with the authority of [S]tate law." *Monroe* v. *Pape*, 365 U.S. 167, 184 (1961), overruled in part by *Monell* v. *Department of Social Servs. of the City of N.Y.*, 436 U.S. 658, 663 (1978) (overruling *Monroe* case "insofar as it holds that local governments are wholly immune from suit under § 1983"). See *West* v. *Atkins, supra* at 56-57. See generally 1 M.A. Schwartz, Section 1983 Litigation § 5.05 (4th ed. 2003 & Supp. 2006). Under the third principle, a police officer may be acting under color of State law, but *not* acting within the scope of his employment, because he may have "misused" or "abused," in the Supreme Court's language, the authority given to him by the State. The discussion *supra* informs us that the two concepts — acting within the scope of employment and acting under color of State law — do not involve precisely parallel considerations (although there may, in a given case, be some overlap). The scope of employment issue bespeaks a narrower inquiry and, in certain cases, would allow a fact finder to conclude that an officer who is acting under color of State law for purposes of § 1983 liability is not acting within the scope of his employment for purposes of G. L. c. 258, § 9A, indemnification. The validity of these latter points are reinforced by Maimaron's concession that he cannot advance an argument of issue preclusion or collateral estoppel.

In this case, the arbitrator provided no explanation to support his conclusion that Oxner was acting within the scope of employment, and he did not refer to, much less discuss, the standards governing the scope of official duties exception set forth in the

*Pinshaw* decision. Viewed from the perspective that the arbitrator did not deal in any meaningful manner with the problem we now have, we think that he could properly conclude, on the record before him, that Oxner was acting under color of State law. The facts found by the arbitrator establish that Oxner was subject to recall twenty-four hours a day, cf. *Revene* v. *Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); that he eventually displayed his police badge to Maimaron thereby officially identifying himself as a police officer, see *Rivera* v. *LaPorte*, 896 F.2d 691, 696 (2d Cir. 1990); and that he issued an official command to stop, seeking to arrest Maimaron for some undetermined violation of law, see *Abraham* v. *Raso*, 183 F.3d 279, 287-288 (3d Cir. 1999). These facts do not, however, compel a conclusion that Oxner was acting within the scope of his employment. Rather, because Oxner could be found to have acted unlawfully and with excessive force in subduing Maimaron (after an encounter in the lounge where Maimaron had done nothing unlawful), a fact finder could conclude that Oxner "abused" his authority, namely, that he was acting outside the scope of his employment, even though he was acting under color of State law. In the circumstances of this case, it was *not* necessary for the arbitrator to find that Oxner had acted within the scope of employment in order to find that he acted under color of State law. To establish that prerequisite to § 1983 liability, it was necessary for the arbitrator to find only that Oxner had acted under color of State law. It was not necessary for him to decide whether Oxner had "abused" the authority given to him by the State. The latter issue, which governs the scope of employment exclusion, must now be independently determined under the standards set forth in *Pinshaw*.[10]

It was also not necessary for the arbitrator to find in connection with the claims before him that Oxner was not acting wilfully, wantonly, or maliciously, see *McKay* v. *Hammock*, 730 F.2d 1367, 1373 & n.5 (10th Cir. 1984) (explaining state of mind or intent not part of action under 42 U.S.C. § 1983 unless

---

[10]There is another factor that influences this conclusion. A government defendant usually cannot be compelled to arbitrate a civil rights claim under 42 U.S.C. § 1983. See *Perez-Serrano* v. *DeLeon-Velez*, 868 F.2d 30, 32-33 (1st Cir. 1989) (in § 1983 action seeking damages, municipal defendant had right to jury trial).

action is based on constitutional provision that itself incorporates element of scienter). See also *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 98-99 (1987) (Massachusetts Civil Rights Act provides State remedy for deprivation of secured rights occasioned by threats, intimidation, or coercion, but no requirement of State action and no requirement that defendant's actions be wilful or hostile thereunder). There must be a trial on this exclusion as well. The standard for assessing Oxner's conduct under this exclusion was described in *Pinshaw* in these terms:

> "[F]or purposes of § 9A, in a civil rights context 'wilful, wanton, or malicious' conduct means egregious conduct which would warrant imposition of punitive damages in the underlying action. In Federal civil rights actions, which are among the actions for which § 9A provides indemnity, the United States Supreme Court has interpreted the terms 'malice,' 'wanton,' and 'wilful' to constitute a standard for punitive damages 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' *Smith* v. *Wade*, 461 U.S. 30, 39-40 n.8, 56 (1983). Linking the exclusion from indemnification to the standard for punitive damages achieves the Legislature's clear intent; it indemnifies officers for intentional torts and civil rights violations occurring within the scope of their official duties, yet excludes indemnification in egregious cases. It also provides a bright line test for precluding indemnification where punitive damages are awarded in the underlying action."

*Pinshaw, supra* at 697.

The arbitrator's conclusion that Oxner had not acted wilfully, wantonly, or maliciously does not, on this record, preclude a finding that Oxner took himself outside the coverage of § 9A, when he confronted, and viciously attacked, Maimaron outside the lounge. Oxner's conduct could be found by a trier of fact to be "egregious" (and therefore punitive) in the sense described by the *Pinshaw* case.

Finally, we note that *both* exclusions involve the need for a

fact finder to ascertain Oxner's state of mind. Summary judgment, when an actor's state of mind is relevant, is strongly disfavored. See *Pinshaw, supra* at 695, citing *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984).

3. *Prejudgment and postjudgment interest.* Because the issue of indemnification under G. L. c. 258, § 9A, remains unresolved against Maimaron (as assignee), we address the Commonwealth's claims regarding interest only with respect to the issue of interest awarded to Oxner in connection with the Commonwealth's breach of its duty to defend.[11]

We conclude that Oxner is entitled to awards of prejudgment interest for his defense costs from the date of the arbitration award to the date of the entry of judgment,[12] and postjudgment interest. This is so because the language in the second paragraph of G. L. c. 258, § 9A, providing for indemnification of "*all* personal financial loss and expenses, including but not limited to legal fees and costs, places no limitation on the nature, or extent, of the financial loss (emphasis added). Cf. *Todino* v. *Wellfleet*, 448 Mass. 234, 236-237, 239 (2007) (concluding that police officer incapacitated in performance of official duties, without fault of her own, entitled under G. L. c. 41, § 111F, to compensation without loss of pay which, although not expressly provided, included recovery of interest). The recovery of interest is necessarily implied by the above-quoted language, which is much more specific than the statutory language in issue in *Todino* v. *Wellfleet, supra* at 239, and the award of interest thus effectuates the purposes of indemnification. See *Pinshaw, supra* at 696. See also *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 629 (1984).

4. *Request for attorney's fees and costs on appeal.* Because triable issues of fact exist concerning the applicability of the exclusions in G. L. c. 258, § 9A, and we, therefore, cannot

[11]Maimaron's claims for interest are premature and cannot be entertained until the litigation concerning the exclusions is completed, and then only if the exclusions are determined to be inapplicable.

[12]Oxner is not entitled to *preaward* interest because the issue of such interest was not submitted to arbitration. See *Connecticut Valley Sanitary Waste Disposal, Inc.* v. *Zielinski*, 436 Mass. 263, 271 (2002); *Reilly* v. *Metropolitan Prop. & Liab. Ins. Co.*, 412 Mass. 1006, 1007 (1992); *Sansone* v. *Metropolitan Prop. & Liab. Ins. Co.*, 30 Mass. App. Ct. 660, 661-663 (1991).

make any final determinations with respect to Maimaron's request for attorney's fees and costs on his claim for indemnification at this time, we may only take up Oxner's request for attorney's fees and costs for the appeal pursuant to *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). Oxner is entitled to recover a reasonable award and may do so by complying with the *Fabre* procedures. *Id.* at 11. He is to file an application with the clerk of the court for the Commonwealth within fourteen days of the date of rescript, and the Commonwealth shall be afforded fourteen days to file a response.

5. *Final observations.* This case, particularly with reference to Oxner's defense by the Commonwealth, has not been handled well. The Commonwealth, to satisfy its defense obligations under § 9A, should have defended Oxner under a reservation of rights (and litigated the indemnification issue later), all as explained in *Pinshaw, supra* at 701 n.19. The Commonwealth also could have sought a declaratory judgment in advance of the arbitration to determine whether it was obligated under § 9A to defend Oxner. This procedure is utilized in insurance cases to determine an insurer's obligation when there is a legitimate question about provision of a defense, see 1 R.H. Long, Liability Insurance § 5.04[2][a] (2006), and we discern no reason why the procedure would not have utility in this type of case.

6. *Conclusion.* The judgment for the plaintiffs is vacated. The case is remanded to the Superior Court for the entry of a new and partial judgment stating that the Commonwealth breached its duty to defend Oxner under G. L. c. 258, § 9A, and that he is entitled to the damages stated in paragraph 4 of the "Amended Judgment on Finding of the Court" ($84,879), together with prejudgment and postjudgment interest consistent with this opinion. With respect to the Commonwealth's liability for indemnification to Maimaron (as assignee), the case is remanded for further proceedings consistent with this opinion.

*So ordered.*