NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-552

SUSAN ANDERSON

vs.

COMMONWEALTH OF MASSACHUSETTS & others[1] (and a consolidated case[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The question in these consolidated appeals is whether under G. L. c. 258, § 9A, the plaintiffs, Major Susan Anderson and Colonel Richard McKeon, are entitled to indemnification from the Commonwealth for financial losses they incurred in defending against an order to show cause issued by the State Ethics Commission (commission). On the parties' cross-motions for summary judgment, a Superior Court judge ruled in favor of the defendants, and the plaintiffs each appealed. We conclude that the plain and unambiguous language of § 9A does not apply to

---

[1] The Executive Office of Public Safety and the Department of State Police.

[2] Richard McKeon vs. Commonwealth of Massachusetts.

losses sustained in connection with proceedings before the commission and thus affirm.

Background. The essential facts are undisputed. On October 16, 2017, a State Police trooper arrested the daughter of a judge. Three days later, McKeon, a State Police colonel, issued an order through the chain of command to Anderson, a State Police major,[3] requiring her to meet with the trooper for the purpose of redacting certain statements from the arrest report. Major Anderson complied with the order and provided the trooper with the information he was to redact.

In November 2017 the trooper sued Major Anderson and Colonel McKeon in Federal court for alleged civil rights violations. Pursuant to § 9A, Major Anderson and Colonel McKeon requested indemnification from the Commonwealth for their legal fees and costs related to the trooper's lawsuit, and those requests were approved.[4] In July 2018 a Federal judge dismissed the trooper's civil rights claims with prejudice.

---

[3] Both plaintiffs have since retired from the State Police.

[4] The letters approving the requests noted that representation by the Attorney General's Office was not available because of a conflict of interest. The conflict arose because the Attorney General's Office was conducting an investigation into the actions of Major Anderson and Colonel McKeon. Following that investigation, in April 2018, the Attorney General's Office concluded that there were no grounds for criminal prosecution, but that there was sufficient evidence to warrant further investigation by the commission into potential ethics violations.

2

In June 2020, based on the same set of events, the commission issued an order to show cause against Major Anderson and Colonel McKeon, alleging that they abused their official positions in violation of the standards of conduct set out in G. L. c. 268A, § 23.  In October 2022, after an adjudicatory hearing, the commission issued a final decision and order finding that there was insufficient evidence to prove the alleged violations.  Major Anderson and Colonel McKeon sought indemnification under § 9A for the legal fees and costs they incurred during the commission proceeding, but this time their requests were denied.  This lawsuit followed.

Discussion.  As with all questions of statutory interpretation, we begin with the language of the statute.  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008).  We do not construe a provision in isolation, but "look to the statutory scheme as a whole, . . . so as to produce an internal consistency within the statute" (quotations and citations omitted).  Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).

We understand Major Anderson's appellate brief to be raising two arguments:  that the Commonwealth should have defended her in the commission proceeding under a reservation of

3

rights and litigated the issue of indemnification later; and that the Commonwealth had a duty to indemnify her for the legal fees and costs she incurred in connection with the commission proceeding.[5]  Neither argument persuades us.

Major Anderson's claim that the Commonwealth had a duty to defend under a reservation of rights fails on multiple levels.[6] At the threshold there is no evidence in the record that Major Anderson ever asked the Commonwealth to assume control of her defense, as opposed to reimbursing her for counsel of her choice.  Moreover, even had Major Anderson made such a request, the Commonwealth would have had no duty to defend.  In arguing otherwise, Major Anderson does not mention, let alone grapple with, the relevant statutory language.  The first paragraph of § 9A governs the Commonwealth's duty to defend and provides in relevant part:

> "If, in the event a suit is commenced against a member of
> the state police . . ., by reason of a claim for damages
> resulting from an alleged intentional tort or by reason of
> an alleged act or failure to act which constitutes a
> violation of the civil rights of any person under federal
> or state law, the commonwealth, at the request of the

---

[5] Colonel McKeon, who is proceeding unrepresented on appeal, joined Major Anderson's brief, as he was entitled to do.  Our analysis applies equally to him.

[6] The defendants contend that Major Anderson waived this claim by failing to raise it to the judge.  Although Major Anderson's summary judgment opposition raises the issue of reservation of rights only obliquely, and the judge did not separately address it, we will treat the issue as preserved.

4

    affected police officer, shall provide for the legal
    representation of said police officer."

G. L. c. 258, § 9A, first par.  This provision does not apply

here because the commission proceeding was commenced by the

order to show cause alleging ethical violations, not "by reason

of a claim for damages resulting from an alleged intentional

tort or by reason of an alleged act or failure to act which

constitutes a violation of the civil rights of any person under

federal or state law."  Id.

Contrary to Major Anderson's suggestion, Maimaron v.

Commonwealth, 449 Mass. 167 (2007), and Pinshaw v. Metropolitan

Dist. Comm'n, 402 Mass. 687 (1988), do not impose on the

Commonwealth a free-floating duty to defend that is divorced

from the language of the statute.  As the court stated in

Maimaron, supra at 173, the Commonwealth's duty to defend under

§ 9A "arises when (1) a request for legal representation is made

by the affected police officer; and (2) a lawsuit is brought

against the officer alleging an intentional tort or a violation

of civil rights."  In both Maimaron and Pinshaw, the underlying

lawsuits alleged intentional torts and civil rights violations,

triggering the Commonwealth's duty to defend.  See Maimaron,

supra at 168; Pinshaw, supra at 690.  It was in this context

that the court noted in Maimaron, supra at 182, that the

Commonwealth should have assumed the defense under a reservation

of rights and litigated the issue of indemnification later. Conversely, here, where the plain language of the statute does not extend to an ethics proceeding before the commission, the Commonwealth was under no obligation to defend, with or without a reservation of rights.

We turn to the issue of indemnification. The Commonwealth's duty to indemnify is governed by the second paragraph of § 9A which provides in relevant part:

> "The commonwealth shall indemnify members of the state police . . . from all personal financial loss and expenses, including but not limited to legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment resulting from any alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law . . . ."

G. L. c. 258, § 9A, second par. This provision likewise does not apply here. Even assuming that the commission proceeding qualifies as an "action" as Major Anderson argues, she disregards the language that follows. To trigger the Commonwealth's duty to indemnify, the "action" must have "result[ed] from any alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law." Id. Again, the commission proceeding resulted not from an alleged intentional tort or civil rights violation, but from the order to show cause alleging ethical violations. Thus, under the

6

statute's unambiguous language, the Commonwealth had no obligation to indemnify Major Anderson for her losses. See Pinshaw, 402 Mass. at 692 ("Section 9A deals expressly with intentional torts and civil rights violations").

The language of the first paragraph of § 9A reinforces our conclusion. As mentioned, the first paragraph entitles officers to a defense only with respect to "suit[s] . . . commenced . . . by reason of a claim for damages resulting from an alleged intentional tort or by reason of an alleged . . . civil rights [violation]." G. L. c. 258, § 9A, first par. Major Anderson raises no argument that the commission proceeding qualifies as a "suit" within the meaning of the first paragraph (which it plainly does not), yet would have us read the second paragraph to impose on the Commonwealth a duty to indemnify her losses from the same proceeding. We agree with the defendants, however, that there is no discernible reason why the scope of the Commonwealth's duty to indemnify should be broader than its duty to defend, and we decline to construe the statute in this manner. See Boston Police Patrolmen's Ass'n v. Police Dep't of Boston, 446 Mass. 46, 50 (2006), quoting Atlas Distrib. Co. v. Alcoholic Beverages Control Comm'n, 354 Mass. 408, 414 (1968) (statute must be interpreted "in harmony with common sense and sound reason"); School Comm. of Newton v. Newton Sch. Custodians

Ass'n, Local 454, 438 Mass. 739, 751 (2003) ("we construe statutes to harmonize and not to undercut each other").

Finally, our reading is consistent with the Legislature's purpose in enacting § 9A.  See Filippone v. Mayor of Newton, 392 Mass. 622, 628 (1984) ("Provisions for indemnity should be construed in a manner which will effectuate their purpose").  As the court explained in Pinshaw, 402 Mass. at 696, the intent behind § 9A was to "encourage[] police service" by indemnifying officers against claims of "intentional torts and civil rights violations," as such claims "arise frequently in the scope of police work."  The statute says nothing about charges of ethical violations, and we will "not read into the statute a provision which the Legislature did not see fit to put there."

<u>Commissioner of Correction</u> v. <u>Superior Court Dep't of the Trial</u> <u>Court for the County of Worcester</u>, 446 Mass. 123, 126 (2006). See <u>Triplett</u> v. <u>Town of Oxford</u>, 439 Mass. 720, 728 (2003).

<u>Judgments affirmed</u>.

By the Court (Blake, C.J.,
Shin & Walsh, JJ.[7]),

Clerk

Entered:  June 4, 2025.

---

[7] The panelists are listed in order of seniority.